OPINION

**DRESSER INDUSTRIES, INC.**

v.

**The UNITED STATES, Defendant,**

**R. H. BAKER & COMPANY, Inc., Graver Tank and Manufacturing Co., and Western-Knapp Engineering Company, Third-Party Defendants.**

No. 294–65.

United States Court of Claims.

Oct. 16, 1970.

Robert E. Burns, New York City, attorney of record, for plaintiff. Burns, Lobato & Zelnick, New York City, of counsel.

Joseph A. Hill, with whom was Asst. Atty. Gen. William D. Ruckelshaus, Washington, D. C., for defendant.

Ralph Hammar, Erie, Pa., attorney of record for R. H. Baker & Co., Inc.

Granger Cook, Jr., Chicago, Ill., attorney of record for Graver Tank and Mfg. Co.

William A. Smith, Jr., Washington, D. C., attorney of record for Western-Knapp Engineering Co.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

PER CURIAM:

This case was referred to Trial Commissioner James F. Davis with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on July 15, 1970. The plaintiff and the defendant each filed a notice of intention to except to the commissioner's findings, opinion and recommended conclusion of law; however, on August 25, 1970, they filed a joint motion withdrawing their notices of intention to except and requesting that the court adopt the commissioner's findings of fact, opinion and recommended conclusion of law as the basis for its judgment in this case. On August 31, 1970, the third-party defendant, R. H. Baker & Company, Inc., filed a "motion" stating that it concurs in the result that the petition should be dismissed but that it does not concur in the reasons for dismissal. The time for filing notices of intention to except under the rules of the court has now expired and the case has been submitted to the court without oral argument.

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Therefore, the court concludes as a matter of law that claims 1, 2 and 6 of U.S. Patent 2,738,995, which are the only claims now at issue in this case, are not infringed and the petition is dismissed.

OPINION OF COMMISSIONER

DAVIS, Commissioner:

This is a patent suit under 28 U.S.C. § 1498 to recover "reasonable and entire compensation" for alleged unauthorized use by the United States of the invention described and claimed in U.S. Patent 2,738,995, entitled "Pipe Coupling with

Multipart Clamp." The patent, owned by plaintiff, issued in 1956 on an application filed in 1953 by Roger E. Risley and Howard L. Hoke. Only the issue of liability is before the court; accounting, if any, is deferred to later proceedings. The patent relates to a pipe coupling for large-diameter pipe. There are seven claims. Claims 1, 2 and 6 are in issue.

Pursuant to notice under former Rule 23 (new Rule 41), several of the Government's suppliers entered the suit as third-party defendants. One of the suppliers, R. H. Baker & Company, Inc. (hereafter "Baker"), which made the accused devices, participated in the trial and filed proposed findings of fact and a brief. Defendants say that claims 1, 2 and 6 are invalid, not infringed and are unenforceable. For reasons discussed below, the claims are held not infringed.

*Background and patent in suit*

The invention is directed to the problem of coupling together the ends of large-diameter pipe, e. g., pipe having a diameter of 24 inches or more. Large-diameter pipe raises special coupling problems. For one thing, it is difficult to seal up the gaskets of large couplings to prevent fluid leakage, particularly if the coupling is to be subjected to any axial, rotational or bending movement. Also, large-diameter couplings, because of their weight and size, present problems of shipping, handling, installing, and maintaining. To meet such problems, plaintiff developed the coupling of the patent in suit. Described in detail (and with diagrams) in findings 5 and 6, the coupling, in essence, has three components: (a) a sleeve, or middle ring, which fits over the pipe ends, (b) a pair of gaskets (rubber or the like), one at each end of the middle ring, and (c) a number of clamping devices, called followers, which press against and seal the gaskets between the middle ring and the pipe ends, thereby to prevent leakage of fluid in the pipes. Middle ring sleeves and gaskets were old when the invention was made. The novelty of plaintiff's device is in the design of the followers. As stated in the patent specification:

\* \* \* the coupling \* \* \* [includes] followers which are made up of a plurality of relatively small sections that are manufactured and shipped separately and assembled when being installed on the pipe. The sections are constructed to be assembled in such manner that when the followers are drawn toward the middle ring by bolts or like compression means, rolling of the followers is positively prevented while at the same time adequate gasket pressure is obtained at all points. The follower sections are characterized by a construction which includes torque arms which are adapted to bear against the outer surface of the middle ring to oppose the turning moment which tends to roll the followers. It is a feature of the invention that, when assembled on the pipe, the sections of the follower are individually adjustable so as to make possible the application of uniform gasket pressure all around the circumference of the coupling. Moreover, if a leak should occur at one section, that section can be tightened to correct the leak without disturbing the other sections and without interrupting service in the pipe line. Since the couplings are made up of relatively small pieces, they can be more easily manufactured, shipped, handled and installed than has heretofore been possible. In addition, the nature of certain parts is such that standard parts can be made up in large quantity and kept in stock, to be used as required in making up couplings of different sizes. The cost of production is thereby materially reduced.

The patent specification teaches two types of follower construction. In one embodiment (the "first embodiment"), the followers comprise single-piece U-shaped lugs with arms of unequal length. The shorter arms, called follower bars, press against and seal the gaskets. The

longer arms, called torque arms, rest against the middle ring. The lugs are joined in pairs by nuts and bolts, one lug of each pair being at either end of the middle ring. Pairs of lugs are placed adjacent to one another circumferentially around the middle ring so as to form a substantially continuous ring pressing against and sealing the gaskets. The specification notes:

* * * The follower bar portions of successive sections are disposed end to end and may either be in actual contact or spaced slightly from one another, it being understood that a certain spacing is permissible without giving rise to objectionable cold-flow of the gasket material into the spaces between the follower bar portions.

* * *

In the other embodiment of the invention (the "second embodiment"), the followers are of somewhat different design. Rather than being a series of single-piece U-shaped lugs, the followers comprise (a) circular bars which press directly against the gaskets at either end of the middle ring, and (b) a number of L-shaped pressure plates which bear against the circular bars to hold them in place. The pressure plates, like the U-shaped lugs of the first embodiment, are arranged in pairs circumferentially around the middle ring; and each pair of plates is held together by a nut and bolt. The shorter arm of each plate bears against one of the circular bars; and the longer arm serves as a torque arm to prevent roll-over of the plates when plate pairs are drawn together by tightening the nuts and bolts. The circular bar is segmented into three pieces of 120° circumferential extent each, though the specification notes that the bar can be a single piece or segmented into two or more pieces. The specification, as filed, notes:

* * * In this type of construction [i. e., the second embodiment], the follower bar * * * may be made an endless or split ring or may be divided into two, three or more sections, with a plurality of pressure plates applied to each section. * * *

On reflection, it can be seen that the two above-described follower constructions operate differently. In the first embodiment, each follower is a separate piece (comprising, in essence, a pressure plate and follower bar segment), so that the follower bar segments, which press against and seal the gaskets, are independently adjustable. Such construction lends itself to ease of handling and installation and permits individual adjustment of each follower around the circumference of the coupling. In the second embodiment, the follower bar segments and the pressure plates which hold them against the gaskets are separate elements. The follower bar segments have a circumferential extent greater than any one pressure plate and thus are adjustable in response to movement of the several pressure plates associated therewith. The record shows that the second embodiment has never been made by plaintiff for commercial use but that a form of the first embodiment has been so-made and used.

The invention had its genesis in the development of a large-diameter pipe coupling for the U.S. Army Corps of Engineers. By way of background, in 1952 the Corps of Engineers was engaged in a project for building a dam at Riverdale, North Dakota, known as the Garrison Dam and Reservoir Project. On June 30, 1953, the Corps of Engineers entered into a contract with Southwest Welding and Manufacturing Company, Alhambra, California (the prime contractor) to furnish penstocks and surge tanks at Garrison Dam. The contract specified, among other things, that the contractor shall provide joint couplings for the penstocks "of the double gasket and sleeve type." Because of the large size of the couplings (24 feet in diameter) and the requirement that they articulate (without leaking) with any angular movement of the penstocks, the contract set out a test program to which the couplings must be subjected before final acceptance by the Government.

Under the contract, the Government had the option of selecting a coupling designed for the prime contractor by either the plaintiff or Baker. Accordingly, plaintiff and Baker submitted to the Government drawings showing proposed coupling designs. Plaintiff's drawings showed a coupling similar to the first embodiment of the invention, above described. Baker's drawings showed a coupling different from either embodiment of plaintiff's invention, but having some features similar to each. Baker's proposed coupling, with some changes, was ultimately accepted by the Government and used at Garrison Dam. A slightly modified version of the Garrison Dam coupling (called the "new Baker" coupling) was later used by the Government at another dam project. Plaintiff contends that Baker's Garrison Dam coupling and the new Baker coupling infringe the patent in suit.

*The accused devices*

The Garrison Dam coupling is illustrated and described in detail in finding 8. It comprises a middle ring sleeve, a pair of gaskets, and followers for compressing and sealing the gaskets. The followers consist of (a) two flexible metal rings, each of which presses against one of the gaskets and each of which is made in three segments of 120° circumference each, and (b) a large number of U-shaped lugs arranged circumferentially in pairs around the ends of the middle ring. The lugs have a short arm and a long arm. The short arm of each lug enters the gasket recess at each end of the middle ring and presses against the metal rings, which in turn press against the gaskets to seal the gaskets in place. The long arm of each lug rests against the middle ring to act as a torque arm to prevent lug roll-over as the lug pairs are tightened by nuts and bolts. The long arms are bifurcated at their ends and straddle the bolts which join each lug pair, so that the torque arms have two surfaces bearing against the middle ring.

The new Baker coupling, also described and illustrated in finding 8, is the same as the Garrison Dam coupling except for the design of the long arm of each lug. In the new Baker coupling, the bifurcated ends of each long arm are joined by a metal pad so that each arm has but one surface, rather than two, bearing against the middle ring.

*Prior art and Patent Office prosecution history*

A principal issue is the scope and construction to be accorded the patent claims in light of the prior art and the file wrapper history of the patent application. It is therefore necessary to set out in some detail the patent's prosecution history in the Patent Office. The patent application was filed on August 6, 1953, shortly after the Government selected the proposed Baker design for Garrison Dam (July 30, 1953). The application asserted 20 claims of varying scope. In essence, the claims defined a coupling having a middle ring, gaskets, and followers for applying pressure to the gaskets. Most of the claims recited that the followers consisted of, among other things, "a plurality of sections each comprising a follower bar portion * * *." Some of the claims were more specific, reciting that the followers consisted of "at least six sections each comprising a follower bar portion * * *." Two claims were directed specifically to the second embodiment of the invention, reciting that the followers consisted of "follower bar portions * * * and a plurality of separate pressure plates bearing on * * * the follower bar portions." All but two of the claims recited the torque arms on the followers by which roll-over of the followers is prevented upon tightening the nut and bolt connecting each pair of followers.

The application met considerable resistance during extensive prosecution before the Patent Office. The patent examiner rejected the originally filed claims (as well as additional claims later asserted) as unpatentable over the prior art which teaches various pipe-coupling designs and shows that the pipe-coupling art was well-developed and crowded. (Findings 9 and 11.) In brief, the art

showed it was old to couple plain-end pipe using a middle ring sleeve, a pair of gaskets and followers which are bolted together to apply sealing pressure to the gaskets. The art also showed the concept of segmenting the followers into sections which either bear directly against the gaskets or against continuous metal rings which, in turn, bear against the gaskets. Furthermore, the art had earlier recognized the problem of roll-over of segmented followers and had solved it by providing lug-arm extensions (torque arms) to counteract roll.

After several interviews with the patent examiner, and after narrowing the scope of the claims from time to time during prosecution to meet the examiner's rejections, the applicants ultimately asserted claims which became patent claims 1–7. Claims 1–7 are narrower in scope than any claims previously asserted. Claim 1 is set out below in outline form and with limitations here pertinent italicized:

1. In a coupling for plain end pipe,

a continuous middle ring for receiving plain end portions of two pipe lengths to be coupled, opposite end portions of the middle ring defining annular gasket recesses open to the ring ends and to the inner surface of the ring,

annular gaskets in said recesses,

followers for applying pressure to said gaskets, each of said followers comprising

a *plurality of like sections each of which has a circumferential extent of not more than ninety degrees* and, when viewed in a section including the axis of the ring and follower, is U-shaped with arms of unequal length and comprises

a shorter inner arm portion entering axially into said gasket recess to apply pressure to the gasket, *adjacent follower sections having gasket-engaging portions that are sub-stantially contiguous with one another in a circumferential direction to provide a substantially continuous ring engaging the gasket,*

a longer outer arm portion extending along the outside of the ring in a direction lengthwise of the ring but terminating substantially short of the gasket recess at the opposite end of said ring, and

a radial portion connecting said inner and outer arm portions and spaced from the end face of the adjacent ring end, the radial portion of each of said follower sections being provided with at least one bolt hole,

through bolts extending through aligned bolt holes in the follower sections at opposite ends of said ring, and nuts on said bolts, the tightening of said nuts on said bolts drawing the opposite followers toward one another to apply pressure to the gaskets and

the longer outer arms of said follower sections having at least one portion extending radially inwardly beyond said bolts to form a bearing surface bearing on the outside of the ring to counteract torque resulting from the pull of said bolts and the resistance of said gaskets, *said bearing surfaces being spaced circumferentially from said bolts,* and said longer arms of the follower sections having clearance from said bolts so that the bolts are free to move in a lengthwise direction to equalize the pressure on the gaskets at the opposite ends of the ring,

*the sum of the bearing surfaces of the outer arm and the bolt holes extending through the follower sections being at least three for each section,*

said bolt holes and bearing surfaces being disposed symmetrically in each section with respect to a plane midway between the ends of the section and including the axis of the ring.

Giving due regard to the invention disclosure, the prior art and the limitations added to the claims during prosecution of the application, the patent claims are not entitled to a broad construction but rather are of narrow scope, commensurate with an invention in a crowded art. Straussler v. United States, 339 F.2d 670, 168 Ct.Cl. 852 (1964); Lavelle Aircraft Corp. v. United States, 358 F.2d 1005, 175 Ct.Cl. 325 (1966).

*The infringement issue* [1]

This court said in Autogiro Co. of America v. United States, 384 F.2d 391, 401, 181 Ct.Cl. 55, 68 (1967), rehearing denied, 184 Ct.Cl. 801 (1968):

> * * * the determination of patent infringement is a two-step process. First, the meaning of the claims in issue must be determined by a study of all relevant patent documents. Secondly, the claims must be read on the accused structures. * * *

A principal dispute between the parties revolves around the meaning in the claims of the word "sections." Defendants contend that "sections" has reference to the number of physically discrete follower bar segments comprising the coupling. Thus, according to defendants, the number of "follower sections" in a coupling is the same as the number of follower bar segments. Plaintiff takes a different view, contending that "sections" refers to the number of pressure plates in a coupling, which may or may not be the same as the number of follower bar segments. Thus, a coupling having, e. g., a two-piece follower bar and 36 pressure plates, would be a two-section coupling according to defendants (each section being 180° in circumference) and a 36-section coupling according to plaintiff (each section being 10° in circumference). The issue is crucial because claim 1 calls for follower "sec-

tions" having a circumferential extent of "not more than ninety degrees."

The record, particularly the patent application's prosecution history, supports defendants' view. The patent specification, as filed, noted that the coupling includes "followers which are made up of a plurality of relatively small *sections* that are manufactured and shipped separately and assembled when being installed on the pipe." (Emphasis supplied.) The specification also noted that for large-diameter pipe, the followers "are composed of a relatively large number of sections, preferably at least six, and for large pipe as many as twelve or more." Such "sections" are illustrated in the first embodiment of the invention (Figs. 1–21) and include, among other things, the follower bar segments which press against and seal the gaskets. The specification further says, "In the coupling * * * [of] Fig. 1, *each follower ring* has twenty-four *sections*. The individual *sections* are hence relatively small even for very large diameter pipe." (Emphasis supplied.) In the second embodiment of the invention (Figs. 22–26), the follower "section" is said to be the part of the coupling which extends around a 120° circumferential portion of the pipe to be joined. Specifically, Fig. 22 of the patent is said to show "another embodiment of *a* follower *section*"; and Fig. 23 is said to show "a portion of the follower *section* shown in Fig. 22." (Emphasis supplied.) With respect to the second embodiment, the specification further said, " * * * the follower bar * * * may be divided into two, three or more *sections*, with a *plurality of pressure plates* applied to each *section*." (Emphasis supplied.)

After allowance by the Patent Office of claims 1–7, plaintiff's attorney filed an amendment to the specification under Patent Office Rule 312 [2] which stated

---

I. For purposes of resolving the infringement issue, only claim 1 is considered. Claims 2 and 6 depend on claim 1 and cannot be infringed unless claim 1 is infringed. *Autogiro, infra;* In re Schutte, 244 F. 2d 323, 44 CCPA 922 (1957).

2. Rule 312 (37 C.F.R. § 1.312) provides:
Amendments after the notice of allowance of an application will not be permitted as a matter of right, but may be made, if the printing of the specification

that, with respect to the second embodiment of the invention, " * * * the term section * * * [is] used to designate a pressure plate, the associated torque arm or arms and the *adjacent portion of the follower bar.*" (Emphasis supplied.) Also the words "sections" and "section", quoted above and emphasized, were changed to "segments" and "segment", respectively.

The word "section" was used many times in the patent specification and claims, as filed; and it is clear from the disclosure read as a whole, and in view of the description of the various embodiments of the invention, that "section" was intended to refer to physically discrete portions of the follower bars which bear against the gasket. Thus, if the follower bar comprises three pieces, the coupling has three "sections," etc. Accordingly, the definition of "section" added to the specification by amendment under Rule 312 is not consistent with the use of that term in the application as filed; and it constitutes "new matter" within the meaning of 35 U.S.C. § 132[3] and must be disregarded in construing the scope and meaning of the claims. Mackay Radio & Telegraph Co. v. Radio Corp. of America, 306 U.S. 86, 59 S.Ct. 427, 83 L.Ed. 506 (1939).[4] Such definition defines "section" with reference to pressure plates and torque arms rather than integral portions of the follower bar. Thus, with respect to the second embodiment of the invention shown in patent Figs. 22–26, the new definition creates hypothetical and imaginary divisions (or "sections") of the follower bar. Such definition finds no support in the application as filed, and in fact is inconsistent with the definition of "section" as originally disclosed with respect to the second embodiment. Accordingly, if the claims were construed to define "section" as plaintiff contends, they would be invalid. Mackay Radio & Telegraph Co., *supra.*

Having so construed the specification and claims, it is clear that the accused devices do not infringe. They do not have "a plurality of like sections * * * of not more than ninety degrees," as called for by the claims, but rather have sections of 120° circumference. And in view of the Patent Office prosecution history of the claims, which shows that the "ninety degrees" limitation (as well as other limitations) was added to distinguish over admittedly close prior art, plaintiff cannot now construe the claims to cover follower sections of greater than 90°.[5] *See* Haliczer v. United States, 356

---

has not begun, on the recommendation of the primary examiner, approved by the Commissioner, without withdrawing the case from issue.

3. 35 U.S.C. § 132 provides in part:
   * * * No amendment shall introduce new matter into the disclosure of the invention.

4. It is pertinent to point out that when plaintiff's attorney filed the amendment under Rule 312, he urged its entry because " * * * the above amendments are directed solely to formalities of wording in the specification and require no reconsideration of the claims or further search." No doubt, the patent examiner entered the amendment on that basis since Order No. 3311 of the Commissioner of Patents, dated May 22, 1935, requires that any amendment after allowance "affecting the disclosure of the specification, or adding claims, or *changing the scope of*

*any claim"* (emphasis supplied) must be approved by the Commissioner of Patents or his delegate (the Supervisory Examiner). See Manual of Patent Examining Procedure, ¶ 714.16 (3d ed. 1961). The record shows that the patent examiner entered the amendment under his own name, and there is nothing to suggest that a Supervisory Examiner, or other delegate of the Commissioner, considered the matter.

5. Plaintiff had earlier asserted claims broad enough to cover "follower sections" of greater than 90° circumferential extent. However, when patent claims 1–7 were asserted, which for the first time included the "ninety degrees" limitation, plaintiff's attorney noted that at a previous interview with the patent examiner, the "application and the prior art were fully discussed and amendments were suggested to improve the wording of the * * * [claims]" and the new claims (patent

F.2d 541, 174 Ct.Cl. 507 (1966), and cases cited therein.

In view of the above, it is not necessary to consider other points raised by defendants regarding infringement;[6] nor is it necessary to consider patent validity. Dominion Magnesium Ltd. v. United States, 320 F.2d 388, 162 Ct.Cl. 240 (1963); *Lavelle, supra.*

### Findings of Fact

1. This is a patent suit under 28 U.S. C. § 1498. Plaintiff seeks reasonable and entire compensation for alleged unauthorized use and manufacture by or for the defendant, the United States, of the invention of U.S. Patent 2,738,995, entitled "Pipe Coupling with Multipart Clamp," issued to plaintiff on March 20, 1956, on an application filed August 6, 1953, by Roger E. Risley and Howard L. Hoke. Plaintiff's petition was filed in this court on August 20, 1965.

2. Plaintiff is a Delaware corporation and has been the record owner of the patent in suit since it was granted.

3. In response to notices issued under former Rule 23 (now Rule 41), Graver Tank and Manufacturing Co., Western-Knapp Engineering Company, and subcontractor R. H. Baker & Company, Inc. (hereafter "Baker"), appeared as third-party defendants and filed answers. Baker participated in the trial and filed proposed findings and a brief.

4. The issues before the court are patent validity, patent enforceability and patent infringement. The parties have agreed to defer trial on the accounting issue, if any, until a ruling by the court on liability.

5. The patent in suit relates to pipe couplings, particularly useful for joining together the ends of plain-end pipe of large diameter (24 inches or more). The patent specification notes, however, that the coupling can be modified for use with a bell and spigot pipe joint. In essence, the coupling comprises three elements: a middle ring which fits around the pipe ends; a pair of gaskets; and clamping devices, called followers, which press against the gaskets to seal them between the middle ring and pipe ends.

The invention is best understood with reference to patent Figs. 2, 3 and 4, reproduced herein, which show one embodiment of the coupling. The figures show part of a complete coupling. Referring to Fig. 2, the pipes to be joined are shown in cross section at 32. A continuous ring 34, called the middle ring, receives the pipe ends. At each end 40 of middle ring 34 is an annular recess 35 into which fits a gasket 36 (rubber or

---

claims 1–7) "incorporate[d] the suggested changes." It is clear, therefore, that both the applicants and the patent examiner considered the new claim limitations, including the "ninety degrees" limitation, to be necessary to define the invention properly and distinguish it over the prior art.

It is also pertinent to note that, before the invention in suit was made, plaintiff built a coupling for large-diameter (13 feet) plain-end pipe for Folsom Dam in California which had a follower ring with three 120° segments bolted together. While it is not clear from the record that the Folsom Dam coupling was known to or considered by the Patent Office as prior art, plaintiff was obviously aware of it; and it is reasonable to infer that the "ninety degrees" limitation was added to the claims, at least in part, to distinguish

over the Folsom Dam structure. In any event, prior art cited and considered by the Patent Office teaches the concept of segmenting follower rings into three 120° segments. (See finding 11.)

6. *E. g.,* defendants contend that the new Baker coupling does not infringe because the torque arms of its lugs avoid the claim limitations that the "bearing surfaces * * * [of the torque arms are] spaced circumferentially from said bolts" and "the sum of the bearing surfaces of the outer arm and bolt holes * * * [is] at least three for each section." The new Baker coupling, as well as the Garrison Dam coupling, does not infringe for reasons above discussed, and it is therefore not necessary to consider this latter contention.

the like). Followers 38 are located at each end of the middle ring and apply sealing pressure to gaskets 36, thereby to prevent fluid in the pipes from leaking out between the pipe ends and the middle ring. Sections of the followers 38 are placed in pairs circumferentially around the pipe, as best seen in Figs. 2 and 3. Each pair of follower sections, as shown in Fig. 3, extends 15° around the circumference of the pipe. Thus, it requires 24 follower section pairs (360°/15°) to make a complete coupling. The follower sections are placed circumferentially adjacent, or contiguous, to each other, thus providing a substantially continuous ring pressing against and sealing the gaskets. The patent specification says:

> * * * The follower bar portions [45 in patent Fig. 3] of successive sections are disposed end to end either in actual contact or spaced slightly from one another, it being understood that a certain spacing is permissible without giving rise to objectionable cold-flow of the gasket material into the spaces between the follower bar portions. * * *

Each section of follower 38 is U-shaped (Fig. 2) with arms of unequal length. The shorter arms 45 press against gaskets 35. The longer arms 58 extend over the outside of the middle ring and rest against it. Each pair of follower sections is connected by a bolt 62 and nut 64. As the nut and bolt are tightened, the followers are pulled together, thus pressing against and sealing the gaskets 36. Arms 58, resting against the middle ring (Figs. 2 and 4), prevent the followers from rolling over as the nuts and bolts are tightened As shown in Fig. 4, the longer arms 58 are bifurcated and are positioned parallel to and clear of the bolts so that the bolts are free to move lengthwise, thereby to equalize gasket-sealing pressure on opposite gaskets as the bolts are tightened.

[A2834]  PATENT IN SUIT

[A2835]  PATENT IN SUIT

6. Another embodiment of the invention is shown in Figs. 22 to 26, reproduced herein. It differs from the embodiment described in finding 5 principally in the structure of the follower sections. As best seen in Fig 24, a follower bar 645 presses against the gasket 636. Bar 645 is an endless or split ring and is not attached to pressure plates 646. Rather, the pressure plates contact and are held to the bar by projections 691 and depression 692. As the pressure plate pairs 646 are tightened, bar 645 presses against gaskets 636 and seals them in place. Bar 645 may be split into two or more segments. Fig. 22 shows one segment of a three-segment bar, each segment being of 120° circumferential extent. The bar's segments are

connected by flanges 694, or alternatively are held together by a ship-lap (Fig. 26).

**Fig. 22.**

**Fig. 26.**

**Fig. 23.**

**Fig. 25.**

**Fig. 24.**

P A T E N T   I N   S U I T

[A2837]

7. The patent claims in suit are 1, 2 and 6. The claims are set out below in outline form (emphasis added) with numerals inserted for ease of understanding. The numerals refer to Fig. 2 unless otherwise stated.

1. In a coupling for plain end pipe,

a continuous middle ring [34] for receiving plan end portions [32] of two pipe lengths to be coupled, *opposite end portions of the middle ring defining annular gasket recesses* [35] open to the ring ends and to the inner surface of the ring,

annular gaskets [36] in said recesses,

followers [38] for applying pressure to said gaskets, each of said followers comprising

*a plurality of like sections each of which has a circumferential extent of not more than ninety degrees* and, when viewed in a section in-

cluding the axis of the ring and follower, is U-shaped with arms of unequal length and comprises

a shorter inner arm portion [48] entering axially into said gasket recess to apply pressure to the gasket, *adjacent follower sections having gasket-engaging portions that are substantially contiguous with one another in a circumferential direction [Fig. 3] to provide a substantially continuous ring engaging the gasket,*

a longer outer arm portion [58] extending along the outside of the ring in a direction lengthwise of the ring but terminating substantially short of the gasket recess at the opposite end of said ring, and

a radial portion [46] connecting said inner and outer arm portions and spaced from the end face of the adjacent ring end, the radial portion of each of said follower sections being provided with at least one bolt hole [60],

through bolts [62] extending through aligned bolt holes in the following sections at opposite ends of said ring, and nuts [64] on said bolts, the tightening of said nuts on said bolts drawing the opposite followers toward one another to apply pressure to the gaskets and

the longer outer arms of said follower sections having at least one portion extending radially inwardly beyond said bolts to form a bearing surface bearing on the outside of the ring to counteract torque resulting from the pull of said bolts and the resistance of said gaskets, *said bearing surfaces being spaced circumferentially from said bolts,* and said longer arms of the follower sections having clearance from said bolts so that the bolts are free to move in a lengthwise direction to equalize the pressure on the gaskets at the opposite ends of the ring,

*the sum of the bearing surfaces of the outer arm and the bolt holes extending through the following sections being at least three for each section,*

said bolt holes and bearing surfaces being disposed symmetrically in each section with respect to a plane midway between the ends of the section and including the axis of the ring.

2. A pipe coupling according to claim 1, in which each of said follower sections has a central bolt hole [60] with a bolt [62] therein, and in which

said longer outer arm [58] of each of said sections is bifurcated [Fig. 4] to provide two circumferentially spaced-apart bearing surfaces bearing on the outside of said middle ring on opposite sides of said bolt.

6. A pipe coupling according to claim 1, in which each of said followers comprises a gasket-engaging portion disposed in said gasket recess and removably associated with the remainder of the follower by interfitting projections [691, Fig. 24] and recesses [692, Fig. 24].

8. Plaintiff alleges that patent claims 1, 2 and 6 are infringed by two types of couplings installed at various dams built for the Government. The parties agree that the couplings were used by defendant within the 6-year period preceding the filing of plaintiff's petition. The couplings will be referred to as the "Garrison Dam coupling" and the "new Baker coupling."

(a) The Garrison Dam coupling, illustrated in Figs. B1–B4, reproduced herein, comprises a middle ring 2, about 24 inches long and 24 feet in diameter; two gaskets 4 in recesses at each end of the middle ring; and followers 5 for compressing the gaskets. The followers comprise: (i) two follower rings 6, each of which press against an annular gasket 4 and which are made in three segments of 120° circumference each, and (ii) 141 pairs of lugs 7 arranged circumferentially around the end of middle ring 2

for applying pressure to follower rings 6. Each pair of lugs is joined by a bolt 10 and nut 11. As the bolts and nuts are tightened, the lugs are drawn together, thereby to put pressure on rings 6 and thus gaskets 4. Follower rings 6 are relatively flexible so that as the lug pairs are tightened, the rings tend to apply localized pressure to the gaskets. The outer arm 8 of each lug bifurcated at the end (as best seen in Fig. B4) so that the lugs straddle the bolts and rest against the middle ring. The three segments of each follower ring 6 are joined by a ship-lap joint, not shown in Figs. B1–B4 but similar to the one illustrated in Fig. 26 (finding 5).

FIG. B1

FIG. B2

FIG. B3

FIG. B4    FIG. B5

[A2836]

A C C U S E D   D E V I C E S

(b) The new Baker coupling is the same as the Garrison Dam coupling except for the design of the lugs. In the new Baker coupling, the outer end of each lug arm 8 is as shown in Fig. B5. A metal pad X bridges the bifurcated ends of arm 8 so that only one bearing surface $(S_3)$ contacts the middle ring, rather than two bearing surfaces $(S_1$ and $S_2$ in Fig. B4).

9. (a) The patent application, as filed, contained 20 claims of varying scope. In essence, the claims defined a coupling having a middle ring, gaskets, and followers for applying pressure to the gaskets. Most of the claims recited that the followers consisted, among other things, of " * * * a plurality of sections each comprising a follower bar portion * * *." Application claims 5, 6 and 18 further recited that the followers consisted of " * * * at least six sections each comprising a follower bar portion * * *." Application claims 9 and 14 recited that the followers consisted of "* * * follower bar portions * * * and a plurality of separate pressure plates * * * bearing on * * * the follower bar portions * * *." (Figs. 22–26.) All but claims 19 and 20 also recited the torque arms on the followers by which roll-over of the followers is prevented upon tightening the nut and bolt connecting each pair of followers.

(b) On March 26, 1954, the Patent Office rejected all claims as unpatentable over the prior art, particularly U.S. Patent 2,087,752 to Carson. Carson teaches a bell and spigot pipe joint in which a piece of plain-end pipe is sealed in a bell (analogous to a middle ring) by means of a gasket and a follower comprising a plurality of U-shaped lugs. One arm of each U-shaped lug bears against a continuous flexible follower ring which in turn bears against the gasket.

(c) After a personal interview with the patent examiner, the applicants on June 25, 1954, canceled all then-pending claims (1–20) and substituted claims 21–31. The new claims were similar in scope to canceled claims 1–18, though worded somewhat differently.

(d) On September 23, 1954, the Patent Office rejected claims 21–31 as unpatentable over the prior art, particularly Carson, noted above, and a newly cited British patent 512,406 to Lindsay. Lindsay teaches a device for joining together pipe flanges, the device having fingers to prevent roll-over upon bolt tightening, analogous to the torque arms of applicants' followers.

(e) After another personal interview with the patent examiner, the applicants on January 19, 1955, canceled claims 21–31 and substituted claims 32–37. The new claims were similar in scope to previously asserted claims, but added the limitation that " * * * the sum of the bearing surfaces of the outer arm [i. e., torque arm] and the bolts extending through the follower sections being at least three for each section, said bolts and bearing surfaces being disposed symmetrically with respect to a plane midway between the ends of each section and including the axis of the ring."

(f) On February 4, 1955, the Patent Office rejected claims 32–37 as unpatentable over the prior art, particularly Carson, noted above, and two additional U.S. patents: No. 782,482 to Brockett and No. 1,993,927 to Gavin. Brockett teaches a pipe coupling for plain-end pipe comprising a middle ring, a pair of gaskets, and followers for applying sealing pressure to the gaskets. The followers are located at each end of the middle ring and are held together by bolts and nuts, but are not segmented. Rather, each follower is a continuous ring. Gavin teaches a clamp for bell and spigot pipe ends, similar to Carson, but in addition teaches a lug which has an arm extension for bearing against the bell to prevent roll-over of the lug when tightened (analogous to the torque arms of applicants' followers).

(g) After another personal interview with the patent examiner, applicants on June 13, 1955, canceled claims 32–37 and substituted claims 38–44, which ultimately became patent claims 1–7. In addition to the limitation noted in (e) above, new claims 38–43 (patent claims 1–6) recited as further limitations that each follower section "has a circumferential extent of not more than ninety degrees," and that "adjacent follower sections * * * [have] gasket-engaging portions that are substantially contiguous with one another in a circumferential direction to provide a substan-

tially continuous ring engaging the gasket." Claim 44 (patent claim 7) is more specific than claims 38–43, reciting that each follower is a "unitary structure," has "an arcuate follower bar having an inner portion which enters axially into said gasket recess to apply pressure to the gasket," and "follower bars of adjacent sections being substantially contiguous in end-to-end relation to provide a substantially continuous ring." In the remarks accompanying the new claims, applicants' attorney noted that claim 38 is the "main claim" and that claim 44 "incorporates the structure of claim 38 but is more specific." It was also noted as follows (emphasis supplied):

The present invention relates to a compression-type coupling for plain end pipe in which the *follower rings* of the coupling are divided into a *plurality of segments or sections*. Couplings of this construction are particularly suitable for large diameter pipe where relatively high line pressures are encountered. For example, couplings of this kind are being used on pipe having a diameter of 24 feet. *The division of the follower ring into a relatively large number of sections* not only makes the followers easier to manufacture, transport and install but also makes it possible to obtain more uniform gasket pressure despite irregularities in the roundness of the pipe. However, the *segmentation of the follower* gives rise to the problem that the relatively short follower sections tend to roll because of the fact that the pull of the bolts is applied radially outwardly of the gasket, thereby creating a moment. There is also a problem of properly positioning and aligning the *individual sections* so as to assure substantially uniform gasket pressure throughout the circumferential extent of the follower.

Plaintiff's attorney also noted the previous interview with the patent examiner and said that the "application and the prior art were fully discussed and amendments were suggested to improve the wording of the * * * [claims]"

and that the new claims (38–44) "incorporate[d] the suggested changes." Thereafter, claims 38–44 (patent claims 1–7) were allowed by the patent examiner.

10. (a) The patent specification, as filed, noted that the coupling includes "followers which are made up of a plurality of relatively small sections that are manufactured and shipped separately and assembled when being installed on the pipe." The specification also noted that for large-diameter pipe, the followers "are composed of a relatively large number of sections, preferably at least six, and for large pipe as many as twelve or more." Such "sections" are illustrated in Figs. 1–21 and include, among other things, the follower bar segments which press against and seal the gaskets. The specification further said, "In the coupling * * * [of] Fig. 1, each follower ring has twenty-four sections. The individual sections are hence relatively small even for very large diameter pipe." In the embodiment shown in Figs. 22–26, the follower "section" is said to be the part of the coupling which extends around a 120° circumferential portion of the pipe to be joined. Specifically, Fig. 22 is said to show "another embodiment of a follower section"; and Fig. 23 is said to show "a portion of the follower section shown in Fig. 22." The specification further said, " * * * the follower bar 645 [Fig. 22] may be divided into two, three or more *sections*, with a plurality of pressure plates applied to each *section*." (Emphasis supplied.)

After allowance by the Patent Office of application claims 38–44 (patent claims 1–7), applicants' attorney filed an amendment to the specification under Patent Office Rule 312. The amendment states that, with respect to the embodiment of the invention shown in Figs. 22–26, " * * * the term section * * [is] used to designate a pressure plate, the associated torque arm or arms and the *adjacent portion of the follower bar*." (Emphasis supplied.) Also the words "sections" and "section," quoted above

and emphasized, were changed to "segments" and "segment," respectively.

In the remarks accompanying the amendment under Rule 312, applicants' attorney noted that the " * * * amendments to the Specification are being made to provide full correspondence between the terms used in the claims and the terms used in the Specification." He urged entry of the amendment "[s]ince the above amendments are directed solely to formalities of wording in the specification and require no reconsideration of the claims or further search * * *." The amendment was duly entered by the patent examiner.

(b) The word "section" is used many times in the patent specification and claims, as filed; and it is clear from the disclosure read as a whole, and in view of the various embodiments of the invention, that "section" was intended to refer to physically discrete portions of the follower bars which bear against the gasket. Thus, if the follower bar comprises three pieces, the coupling has three "sections," etc. Accordingly, the definition of "section" added to the specification by amendment under Rule 312 is not consistent with the use of that term in the application as filed and constitutes "new matter" within the meaning of 35 U.S.C. § 132. The new definition defines "section" with reference to pressure plates and torque arms rather than integral portions of the follower bar. Thus, with respect to the embodiment shown in Figs. 22–26, the new definition creates hypothetical and imaginary divisions (or "sections") of the follower bar. Such definition finds no support in the application as filed, and in fact is inconsistent with the definition of "section" as originally disclosed with respect to the embodiment of Figs. 22–26.

11. The prior art cited by the Patent Office during prosecution of the patent application and by the defendants in this case shows that at the time the invention in suit was made, the pipe-coupling art was a well-developed and crowded art, even for pipe larger in diameter than 24 inches. The prior art shows that it was old to couple plain-end pipe using a middle ring sleeve, a pair of gaskets, and followers which are bolted together to apply sealing pressure to the gaskets. (Brockett, U.S. 782,482; Armbruster, U.S. 1,926,422; Clark, U.S. 1,479,650.) The Clark patent says that the coupling disclosed therein "is designed particularly for * * * pipes of large diameter * * * for example, pipes having an integral [internal?] diameter of from three to eight feet or even larger * * *." It was also old to use segmented followers to apply gasket pressure with the followers bearing directly against the gasket or against a flexible continuous metal ring which in turn bears against the gasket (Carson, U.S. 2,087,752). It was also old to divide follower rings into three segments, each of 120° circumferential extent (Gavin, U.S. 2,059,573). Furthermore, the art had earlier recognized the problem of roll-over of segmented followers and had solved it by providing an extension of the lug arm (a torque arm) to counteract roll (Gavin, U.S. 1,993,927). Also, the art taught the use of projecting fingers (torque arms) to counteract roll of pipe flange clamps (Lindsay, British 512,406). Finally, the record shows that before the invention in suit was made, plaintiff built a coupling for plain-end, large-diameter pipe (13 feet) at Folsom Dam, California, which comprised, among other things, follower rings made in three segments of 120° circumference each and bolted together to form a unitary, rigid ring.

In view of the state of the prior art and the limitations added to the patent claims during Patent Office prosecution to distinguish over the art, the claims in suit must be narrowly construed.

12. In 1952, the U.S. Army Corps of Engineers was engaged in a project for building a dam at Riverdale, North Dakota, known as the Garrison Dam and Reservoir Project. On June 30, 1953, the Corps of Engineers entered into a contract with Southwest Welding and Manufacturing Company, Alhambra, California (the prime contractor), to

furnish penstocks and surge tanks at Garrison Dam. The contract specified that the contractor shall provide joint couplings for the penstocks "of the double gasketed sleeve type." Because of the large size of the couplings (24 feet in diameter) and the requirement that they articulate (without leaking) with any angular movement of the penstocks, the contract set out specific hydrostatic tests to which the coupling must be subjected before acceptance.

Under the contract, the Government had the option of selecting a coupling designed for the prime contractor by either the plaintiff or R. H. Baker & Company. Accordingly, plaintiff and Baker submitted to the Government drawings showing proposed coupling designs. Plaintiff's drawings showed a coupling similar to the embodiment of Figs. 12 and 13 of the patent in suit. Baker's drawings showed a coupling similar to the one ultimately installed at Garrison Dam (described in finding 8(a)) except that the follower lugs did not have torque arms extending out over the middle ring to prevent lug roll-over and the follower bar was made in four 90° segments rather than three 120° segments.

On July 30, 1953, the Corps of Engineers selected the Baker design. However, before final approval and after making a stress analysis of the Baker design, the Corps required that Baker modify the lugs by providing torque-arm extensions to prevent lug roll-over and bolt-bending upon tightening up the lug pairs. On December 9, 1953, the contractor submitted to the Corps of Engineers revised drawings of Baker's coupling design, prepared by an engineering consultant to Baker. In the revised drawings, the lugs were provided with torque-arm extensions and the follower bars were made in three 120° segments. But for minor changes in the dimensions, such revised drawings show the coupling as installed at Garrison Dam. The coupling was built and successfully tested in March, 1954.

**Conclusion of Law**

Upon the foregoing findings of fact and opinion which are made a part of the judgment herein, the court concludes as a matter of law that claims 1, 2 and 6 of U.S. Patent 2,738,995, which are the only claims now at issue in this case, are not infringed and the petition is dismissed.