**William R. COLLIER and Interstitial Systems, Inc., Plaintiffs,**

v.

**AIRTITE, INC. and Zonatherm Products, Inc., Defendants.**

**No. 87 C 4097.**

United States District Court, N.D. Illinois, E.D.

Aug. 26, 1988.

James T. FitzGibbon, Angelo J. Bufalino, C. Michael Kendall, Lockwood, Alex, Fitz-Gibbon & Cummings, Chicago, Ill., for plaintiffs.

Granger Cook, Jr., Dean A. Monco, Cook, Wetzel & Egan, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiffs William R. Collier and Interstitial Systems, Inc. (collectively "Interstitial") filed this action for patent infringement, invoking this court's jurisdiction under 28 U.S.C. § 1338(a). Defendants Airtite, Inc. and Zonatherm Products, Inc. (collectively "Airtite") move for summary judgment on the first amended complaint. Based upon the parties' submissions and oral arguments presented at a hearing on June 24, 1988, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff William R. Collier ("Collier") is the purported inventor of a multi-tiered flooring system used in connection with large main-frame computers. The system

incorporates vertical walls extending between one or more of the flooring levels to provide horizontal and vertical passageways that isolate electrical conductors and direct air to various locations in the computer room. On December 23, 1986, Collier was issued Patent No. 4,630,417 (the "patent") for his invention. The patent contains seven claims. Claim 1 articulates the essential elements of each of Interstitial's claims. It provides:

1. A combination working area floor structure and conductor support and isolator assembly comprising, in combination, a plurality of vertically extending floor support column units each having upper and lower end portions and an intermediate column section, a working area floor positioned by and disposed in overlying relation to said upper ends of said column support units, means on at least one intermediate portion of said support columns for positioning and supporting at least one conductor support floor, said conductor support floor being disposed beneath and spaced apart from said working area floor, *a plurality of vertically extending imperforate wall panel extending between portions of said conductor support floor and said working area floor so as to subdivide the region above said conductor support floor and below said working area floor into a mechanically isolated conductor plenum adapted to receive and support insulated electrical conductors* and to afford mechanical one upwardly extending opening in said working area floor through which said conductors may pass for attachment to an apparatus supported on said working area floor, with said wall panels also defining a mechanically isolated, vertically extending passage extending from beneath said conductor support floor through said isolated plenum and to said working area floor, with an under portion of said working area floor lying above said vertically extending passage and said conductor support floor also including at least one opening therein to afford communication between the area above said working

area floor and the area beneath said conductor support floor. (Emphasis added.)

Claims 2–7 are summarized as follows:

Claim 2: Dependent on claim 1. Adds that two conductor support floors must be present, in addition to a work floor.

Claim 3: Dependent on claim 1. Also requires vertically extending wall panels to provide a "chimney" from the lowermost HVAC plenum through the work floor, and also to provide one or more other "chimneys" from the line voltage cavity to the working area floor.

Claim 4: Dependent on claim 1. Contains essential elements of claim 1 and covers both two- and three-tiered floors.

Claim 5: Independent claim that includes the elements of claim 1 and covers three-tiered floors.

Claim 6: Independent claim that contains the elements of claim 1 and calls for first and second sub-floors with columns arranged in a regular pattern.

Claim 7: Method claim involving the protective encasing of electrical conductors and the provision of a conditioned air duct system for an enclosed environment.

Plaintiff Interstitial Systems, Inc. holds the right, title and interest to the patent.

Defendant Airtite, Inc. also manufactures a multi-tiered flooring system for use in computer rooms (the "Airtite system"). The Airtite system contains multiple floor levels that act as self-contained conduits. Vertical support pedestals stand on the sub-floor and support removable flooring surfaces that separate the horizontal plenum spaces that contain the conductors. David Bessert, the alleged inventor of the Airtite system, was issued Patent No. 4,676,036 on June 30, 1987. Defendant Zonatherm Products, Inc. is Airtite's sales representative. Purchasers of the Airtite system perform all wiring installations themselves. Upon request, Airtite will provide three schematic drawings for the recommended positioning of the electrical conductors in the flooring system.

On May 4, 1987, Interstitial filed this case against Airtite alleging willful infringement of its patent. Interstitial maintains that Airtite is infringing the patent by "marketing combination modular floor and electrical isolation systems that include and incorporate features described and claimed in [the patent]." First Amended Complaint ¶ 7.

### A. Airtite's Motion for Summary Judgment

On June 19, 1987, Airtite moved for summary judgment of noninfringement. It maintains that its system contains no vertical walls or equivalent structures that provide horizontal or vertical passageways for isolating electrical conductors. Airtite's Amended Memo. at 3. In support of its motion, Airtite submits the affidavit of the system's inventor, David Bessert, and offers a number of exhibits, including three schematic drawings of recommended wiring methods given to Airtite customers and photographs showing the positioning of electrical conductors in particular installations of Airtite's system.

#### 1. *The Bessert Affidavit*

David D. Bessert ("Bessert"), the purported inventor of Airtite's flooring system, represents that Airtite neither manufactures nor recommends the use of vertical walls to provide mechanically isolated passageways in its multi-tiered flooring system. Bessert Affidavit at 6. Electrical conductors are installed by the customer or the customer's general contractor. Upon request, Airtite will provide three alternate diagrams for the recommended installation of electrical conductors and receptacles, as well as necessary parts and materials. In each of the three alternate designs, high voltage and low voltage conductors are separated only by means of individual floors. *Id.* at 5, 8.

Bessert explains that the City of Chicago requires that enclosures be placed around computer receptacles to separate the computer plug receptacle from low voltage wir-

ing and prevent the low voltage wiring from draping over the receptacles. *Id.* at 9. Accordingly, Airtite has provided receptacle enclosures to three Chicago customers. Bessert claims that he inspected the installation of the system by each of Airtite's customers and that only Helene Curtis uses vertical walls to isolate electrical conductors in vertical or horizontal passageways.[1] *Id.* at 11. He maintains that Airtite provided neither the material nor the design for Helene Curtis' electrical conductor placement. *Id.* at 12–14.

#### 2. *Airtite's Recommended Installations*

Upon request, Airtite furnishes three schematic drawings that recommend methods for wiring Airtite's flooring system. The first recommended wiring installation reflects a three-tiered, three-plenum structure with a receptacle located in the first plenum space. A four-sided receptacle enclosure surrounds the receptacle and rises approximately half the distance between the first subfloor and the work floor. There is no chimney or isolated vertical passageway for the computer plug and cord or for high voltage conductors. *See* Airtite's Amended Memo., Exhibit D.

The second recommended wiring installation is similar to the first but the receptacle is affixed to a welded angle bracket on the underside of the work floor. Although a high voltage conductor extends through an opening in the first subdivision floor, the cable is protected by flexible conduit. There are no vertical walls to mechanically isolate the low voltage from high voltage conductors. *See id.,* Exhibit E.

The third recommended installation is also similar to the first. However, a three-sided, C-shaped receptacle enclosure surrounds the receptacle in the first plenum space. High voltage conductors extend through the first immediate floor to the receptacle. A computer cord and cable extend from the receptacle through a cutout portion of the work floor. The C-shaped receptacle extends approximately two-

**1.** In August or September 1986, Helene Curtis paid Interstitial $5,000 for a license to use the

installation. Declaration of William C. Collier at ¶ 23.

thirds of the distance between the first subfloor and the work floor and does not mechanically isolate the high or low voltage cables or the computer cord. *See id.,* Exhibit F.

## B. Interstitial's Opposition to Motion for Summary Judgment

Interstitial maintains that its infringement claim raises several issues of material fact that must be resolved at trial. In support, it submits a copy of its patent and the declarations of the inventor of its flooring system, William Collier, and its expert, James H. Bettinger. It also offers the deposition transcript of Airtite's vice president, George Irvine, Airtite's patent and blueprints of Airtite's system.

In its memorandum, Interstitial claims that Airtite's flooring system contains three mechanically isolated plenums that serve to separate low voltage wires, line voltage wires and the HVAC system from each other. Interstitial's Substitute Memo. at 10–11. Further, Interstitial argues that Airtite's flooring system has vertical wall panels that extend between the line voltage floor and the work area floor that form "chimneys" to circulate air from the HVAC plenum to the area above the work area floor. Interstitial's Substitute Memo. at 11. Interstitial contends that there is a genuine issue of material fact as to whether Airtite is liable for literal infringement or infringement under the doctrine of equivalents and that its motion, therefore, must be denied.

### 1. *Literal Infringement*

▇▇▇ Infringement raises the legal issue of claim construction and the factual issue of whether the accused device infringes properly interpreted claims. *Martin v. Barber,* 755 F.2d 1564, 1566 (Fed.Cir. 1985). Every clause of a claimed invention is considered to be material and essential. *See Strumskis v. United States,* 474 F.2d 623, 627–28, 200 Ct.Cl. 668, *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973). Literal infringement requires that

each and every element of a claim and its equivalent function be present in the accused device. *Teledyne McCormick Selph v. United States,* 558 F.2d 1000, 1008, 214 Ct.Cl. 672 (1977).

### *Claim 1*

Interstitial points to the statements of Airtite's expert and its vice president and offers the statements of its own expert as evidence that Airtite's flooring system literally infringes its patent. Interstitial's expert, James H. Bettinger, states that vertical panels extend around the periphery of the three-level floor of the Airtite's flooring system, form the outer ends of the two electrical plenums and define the HVAC chimneys.[2] Bettinger Declaration ¶ 52. He maintains that these panels extend from beneath the conductor support floor through the isolated plenum to the work floor. *Id.* at ¶ 54. Further, he claims that Airtite's system contains an HVAC passage that passes through a hole in the work floor to service the area above the floor, as covered by Interstitial's patent. *Id.* at ¶ 55.

Interstitial argues that both Bessert, Airtite's expert, and Irvine, Airtite's vice president, admit that HVAC chimneys are comprised of four vertical wall panels that extend from below the low voltage floor through the low and high voltage floors to provide HVAC air to the working area. Irvine dep. at 22. Similarly, Bessert testified at his deposition that vertical walls form an HVAC chimney in the Airtite system and isolate the air plenum from the electrical conductors. Bessert dep. at 119, 121. In Bessert's affidavit, however, he denies that the vertical walls are used in Airtite's system to provide mechanically isolated passageways, as provided in claims 1, 5, 6 and 7 of Interstitial's patent. Bessert Affidavit ¶ 6.

Finally, Interstitial contends that Airtite's own patent reflects that each element of claim 1 of the Collier patent is present in Airtite's flooring system. Interstitial points to specific language in the Airtite

---

**2.** At oral argument, counsel for Interstitial maintained that claims 1 through 5 and 7 of Interstitial's patent do not require that electrical conductors be placed in "chimneys."

patent that refers to the plenum spaces between tiers of floors that serve as conduits for low voltage wiring, high voltage wiring and HVAC ducts, and to the segregation of wiring and air circulation apparatus. *See* Airtite patent, column 2, lines 21–25 and column 4, lines 49–50.

*Claim 2*

Claim 2 is dependent on claim 1 and adds that two conductor floors, in addition to a work floor, must be present. Accordingly, Bessert states that any of Airtite's installations with three floors literally infringes Interstitial's patent. Bettinger Affidavit ¶ 57.

*Claims 4 and 5*

Claim 4 is dependent on claim 1; claim 5 is an independent claim. Both claims contain the same elements as claim 1 and cover two-tiered and three-tiered floors, respectively. Interstitial argues that the installation of Airtite's system with a two-tiered or three-tiered floor literally infringes these claims. Bettinger Affidavit ¶¶ 61–62.

*Claim 7*

Claim 7 is a method claim that involves the protective encasing of electrical conductors and the provision of an air duct system for an enclosed environment that includes a building floor structure. Interstitial argues that a completed Airtite installation that infringes claim 1 also literally infringes claim 7. Bettinger Affidavit ¶ 63.

### 2. *Infringement by Doctrine of Equivalents*

■■■ To the extent that Airtite's system does not literally infringe Interstitial's patent, Interstitial argues that it infringes at least claim 3 under the doctrine of equivalents.[3] The doctrine of equivalents provides that an accused device infringes when it performs substantially the same function in substantially the same way to yield substantially the same result. *Grav-*

---

**3.** At oral argument, counsel for Interstitial contended that Airtite's system also infringes claim 6 by the doctrine of equivalents, to the extent that Airtite's system does not provide for a "high voltage chimney."

**4.** Interstitial acknowledges that Airtite systems installed subsequent to the system at Helene

*er Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). Infringement, either literal or by equivalents, is determined by comparing the accused device with the claims in suit, not with the commercial embodiment of the patentee's claimed invention. *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed.Cir.1985).

Interstitial apparently concedes that Airtite's system lacks the particular form of vertically extending wall panels contained in Interstitial's patent to provide a passageway for line voltage cables through the low voltage cavity.[4] It contends, however, that the passageways provided or recommended by Airtite serve the identical purpose by substantially the same means in substantially the same way. For example, wall panels in the Airtite system extend "almost all the way up to the working floor." Interstitial's Substitute Memo. at 19–20; Bettinger Affidavit ¶¶ 58–60.

## DISCUSSION

■■■ Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Donald v. Polk County*, 836 F.2d 376, 378–79 (7th Cir.1988). At the summary judgment stage, the judge does not weigh the evidence but merely determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* The movant bears the burden of demonstrating the absence of all genuine issues of material fact while the court views the evidence and all reasonable inferences in a light most favorable to the nonmovant. *Cooper*

---

Curtis in 1986 "have differed slightly in that the four vertical panels surrounding the high voltage wires as they pass through the low voltage plenum have been substituted for by similar structures having an identical function and result." Interstitial's Substitute Memo. at 10.

*v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir.1984). Where the facts are undisputed, the function of applying claims to the accused device is the province of the district court. *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 654 (Fed.Cir.1984).

■ Comparing Airtite's system with the claims of Interstitial's patent, it is clear that Airtite's system does not contain each element of any of Interstitial's claims. For example, the language of independent claim 1 of Interstitial's patent requires a "plurality of vertically extending imperforate wall panels extending between portions of said conductor support floor and said working area floor so as to subdivide the region [between the support floor and work floor] into a mechanically isolated conductor plenum" to receive and support electrical conductors and to afford a mechanical opening in the work floor through which conductors may pass. These wall panels also must define a mechanical isolated vertically extending passage from beneath the conductor support floor through the isolated plenum to the work floor, that includes at least one opening for communication between the work floor and the area beneath the conductor support floor. Collier patent, claim 1, column 14, lines 58–68 and column 15, lines 1–9.

Neither the claims contained in Airtite's patent nor any of Airtite's proposed installations contain mechanically isolated vertically extending passages that subdivide the horizontal plenum, receive and support electrical conductors and run from the support floors below to an opening in the work floor through which conductors pass. The receptacle enclosures contained in the Chicago installations of Airtite's system do not constitute vertical passageways as defined by Interstitial's claims. Although Bettinger maintains that vertical passages with the foregoing features exist in Airtite's system, his declaration is contrary to the drawings and written description of Airtite's patent, as well as the schematic drawings provided to Airtite's customers. The absence of every element of claim 1 of Interstitial's patent in Airtite's patent and in the recommended installations of Air-

tite's system defeats Interstitial's claim of literal infringement as to claim 1, as well as dependent claims 2, 3 and 4. Dependent claims are not infringed unless the accused device infringes the independent claim upon which they are based. *Dresser Industries, Inc. v. United States*, 432 F.2d 787, 193 Ct.Cl. 140 (1970). Claim 5, although independent, contains the same elements as claim 1 and, therefore, is not literally infringed. Claim 6 is not literally infringed because Airtite's system does not provide for a "high voltage chimney." *See supra* at 1462, note 3.

Similarly, claim 7 requires that "floor and wall panel units combine to define plural passages isolated from one another," and that the passages be "dedicated exclusively to conditioned air passages and electrical conductor passages." The lack of a plurality of mechanically isolated conductor and HVAC passages in Airtite's flooring system defeats Interstitial's literal infringement claim as to claim 7.

Based upon the drawings and written description of the claims of each patent, as well as the affidavit of the inventor of Airtite's system, there is no issue of material fact that Airtite's system does not contain each element of any of the seven claims of Interstitial's patent. In light of the clear disclosure of the drawings and written description of the claims contained in Airtite's patent, testimony to the contrary does not create a legitimate issue for a jury to return a verdict for Interstitial. *See Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 249, 106 S.Ct. at 2510.

■ Interstitial also argues, however, that summary judgment of noninfringement is inappropriate because infringement under the doctrine of equivalents raises material issues of fact. For example, Interstitial contends that the passageways provided for in the Airtite system accomplish the necessary isolation of line voltage conductors with wall panels extending "almost all the way up to the working area floor." Interstitial's Substitute Memo. at 19–20. The trier of fact must decide whether this element of Airtite's system operates in substantially the same way to

perform the same function and achieve the same result. Whether the elements of Air-tite's flooring system, viewed as a whole, operate in substantially the same way, and have substantially the same function and result as the system covered by Interstitial's patent is a question of fact.

 The range of equivalents presents material fact issues relating to the nature of the industry. *See Martin v. Barber, supra,* 755 F.2d at 1568. With regard to a finding of equivalence, proof may be made through testimony of experts or others versed in the technology, by documents, including texts and treatises, and by disclosure of prior art. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. at 608, 609, 70 S.Ct. at 856, 857, 94 L.Ed. 1097 (1950). The task of weighing such evidence belongs to the trier of fact. *Id.* 339 U.S. at 611, 70 S.Ct. at 857.

### CONCLUSION

Defendants' motion for summary judgment of noninfringement is granted as to literal infringement and denied as to infringement by equivalents.