**Willard R. CUSTER and Custer Channel Wing Corporation,**

v.

**The UNITED STATES.**

No. 181–78.

United States Court of Claims.

May 14, 1980.

James J. Nolan, Jr. and W. Michael Pierson, Baltimore, Md., for plaintiffs; Leon H. A. Pierson, Baltimore, Md., attorney of record.

Joseph A. Hill, Washington, D. C., with whom was Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant; Thomas L. Kundert, Dept. of the Air Force, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON DEFENDANT'S MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

### PER CURIAM:

This case comes before the court on plaintiffs' request, filed October 26, 1979, for review by the court of the recommended decision of Trial Judge Francis C. Browne, filed August 21, 1979, pursuant to Rule 54(b) and the court's order of November 10, 1978, on defendant's motion and supplemental motion for summary judgment, having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby affirms and adopts the decision as the basis for its judgment in this case. Accordingly, defendant's motions are granted and the petition is dismissed.

### OPINION OF TRIAL JUDGE

BROWNE, Trial Judge:

This is an action brought by Willard R. Custer (Custer) and Custer Channel Wing Corporation (CWC) against the United States (defendant) under 28 U.S.C. § 1498(a) for unauthorized use or manufacture by or for defendant of the inventions disclosed and claimed in United States Patents Nos. 2,687,262 (the '262 patent), 3,704,842 (the '842 patent), and 3,650,497 (the '497 patent).

Defendant has moved for summary judgment based on its contention that recovery under the '262 patent is barred by the statute of limitations and the accused structure does not infringe either the '497 or '842 patent.[1] Plaintiffs contend that defendant's motions are based on erroneous propositions of law and that genuine issues of material fact are in dispute and remain to be decided. For the reasons stated below, we conclude that there are no genuine issues of material fact in dispute and the case may be decided solely on the law as applied to the undisputed facts. On the basis of such facts and the applicable law, we decide that defendant's motion and supplemental motion for summary judgment should be granted and, accordingly, dismiss the petition.

### "Channeled Aircraft"

"Channeled Aircraft" or a "Channel Wing Aircraft" is a type of jet propelled

---

[1] Leave was granted to amend the petition to include a charge of infringement of claim 3 of the '497 patent after defendant had filed its motion for summary judgment. Thereafter, defendant filed its supplemental motion for summary judgment with respect to claim 3 of that patent. This memorandum and opinion, therefore, is dispositive of both the original and supplemental motions.

aircraft in which either the intake or exhaust air of a jet engine is directed across the upper surface of an upwardly open channel or trough, the longitudinal axis of which extends in the direction of flight. The channel is contoured to function as an airfoil insofar as the speed of the air traveling across the upper surface of the channel, being enhanced by the thrust of the engine, creates an upward force in the channel and thus provides lift for the aircraft to which the channel is attached. The net result of such a configuration is the generation of a lifting force in addition to that provided by the wing airfoil of otherwise conventional aircraft.

Each of the patents in suit relates to an aircraft embodying the "channel" concept. The '262 patent is directed to an aircraft in which the inlet of the jet engine is adjacent the leading edge of the channel, and the discharge of the jet engine is intermediate of the fore and aft ends of the channel. The '842 patent is concerned with the contour of the exhaust stack of the jet engine in relation to the contour of the channel, and the position of the exhaust stack in relation to the leading edge of the channel. The '497 patent deals with a further modification of the channel concept in that the channels are located in close proximity to the discharge end of the jet engines in direct line of communication with the exhaust flow and are vertically adjustable in such a way as to function as ailerons.

Although Custer is the inventor of the invention claimed in each of the patents, he assigned his entire right, title and interest in the '497 patent to co-plaintiff, CWC, but retained title to the '262 and '842 patents. Thus, Custer is plaintiff as to the '262 and '842 patents, and CWC is plaintiff as to the '497 patent.

### The '262 Patent

The '262 patent, issued August 24, 1954 to Willard R. Custer, is entitled "Jet Propelled Channeled Aircraft." It is undisputed that

Custer is the sole party entitled to recovery for infringement of the '262 patent,[2] if any, inasmuch as the patent was not assigned by him to any other party. 35 U.S.C. § 151.

The '262 patent expired on August 24, 1971, the term of the patent being 17 years from the date of issue. 35 U.S.C. § 154. Custer can recover only for acts of infringement committed after the date of issue and prior to the date of expiration of the patent, subject to the statute of limitations prescribed by 28 U.S.C. § 2501 and 35 U.S.C. § 286. *Calhoun v. United States*, 197 Ct.Cl. 41, 45, 453 F.2d 1385, 1387, 172 USPQ 438, 440 (1972); *Hebern v. United States*, 132 Ct.Cl. 344, 348, 132 F.Supp. 451, 453, 105 USPQ 478, 479 (1955). Whereas 28 U.S.C. § 2501 requires suit to be brought within 6 years after the claim "first accrues," 35 U.S.C. § 286 extends the time for bringing suit for a period equal to the time an administrative claim was pending before a department or agency of the Government prior to the date of filing the petition.

The petition in this case was filed on April 27, 1978. Thus, recovery is limited to the period subsequent to April 27, 1972, unless an administrative claim was filed with respect to the patent in suit. Inasmuch as the patent expired on August 24, 1971, no recovery whatever may be had unless the 6-year statute of limitations has been tolled.

Custer argues that an administrative claim was filed on December 21, 1976, thereby tolling the statute of limitations for a period from December 21, 1976 to February 16, 1978, the date on which the claim was denied.

The only evidence relied upon by Custer to establish the filing of an administrative claim with respect to the '262 patent is a letter written by his attorney, Mr. Pierson, on December 21, 1976, to Mr. Joseph E. Rusz, an Air Force patent attorney, which stated:

---

2. In an amended petition filed by plaintiffs on January 12, 1979, Custer asserted ownership of the '262 patent and entitlement to any and all

recovery for its infringement. Defendant in its answer filed February 23, 1979, did not traverse this assertion.

Dear Mr. Rusz:

I enclose for filing Administrative Claim of Willard R. Custer for infringement of patents owned by him *all as set out in the enclosed letter signed by Mr. Custer.* (Emphasis added.)

\* \* \* \* \* \*

The enclosed letter stated:

Dear Mr. Rusz:

I desire to file an administrative claim for compensation before the Department of the Air Force for infringement of my patents by Fairchild Industries, Inc.

\* \* \* \* \* \*

The patents infringed are patents numbers 3,650,497–Claim No. 1, and 3,704,-842–Claim No. 1.

\* \* \* \* \* \*

Since this letter does not mention the '262 patent, Custer's contention is unsupported by the evidence. Custer's argument is to the effect that the letter and enclosures were sufficient to constitute a claim for infringement of the '262 patent within the meaning of 35 U.S.C. § 286, because the patents which were enumerated in the letter were closely related in subject matter to the '262 patent, and because the "existing law is extremely vague as to the necessary requisites of an administrative claim."

■ The tolling provisions of 35 U.S.C. § 286 are designed to afford the proper Government agency "the opportunity of correcting its mistakes after due deliberation" as an alternative to defending a costly law suit in court. *See Fairchild Engine & Airplane Corp. v. United States,* 152 Ct.Cl. 352, 285 F.2d 131, 128 USPQ 153 (1961). In exchange for this benefit to the Government, the patent owner's right to recover against the Government for infringement is extended beyond the normal statutory limit of 6 years.

■ In determining the applicability of the tolling provision of 35 U.S.C. § 286, therefore, the decisive question is whether the patent owner's notice to the Govern-

ment of its claim for infringement is sufficiently detailed to afford the Government a *realistic* opportunity to consider and settle the claim.

Applying this rule to the facts of this case, it is clear that the notice sent to the Government made no reference, express or implied, to a claim for infringement of the '262 patent. Moreover, the language in the cover letter states that the infringed patents are "all as set out in the enclosed letter," thereby foreclosing any reasonable possibility that patents beyond the two expressly mentioned were being asserted as infringed.[3] To say that this was sufficient to serve as a claim for infringement of the '262 patent merely because the '262 patent is directed to subject matter related to that disclosed in the asserted patents, is to impute to the document a competence which it does not possess.

■ Custer, relying principally upon *Japanese War Notes Claims Assn. v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), and *Spevack v. United States,* 182 Ct.Cl. 884, 889–90, 390 F.2d 977, 981 (1968), also asserts that the statute of limitations is tolled if it can be shown that the Government concealed its infringement of the '262 patent. Custer, however, has not alleged any facts which would established concealment or inherently undiscoverable activity on the part of defendant. A mere lack of knowledge of the existence of facts which constitute a cause of action will not postpone the operation of the statute of limitations. *Thomas v. United States,* 125 Ct.Cl. 76, 80 (1953); *Dion v. United States,* 137 Ct.Cl. 166, 167 (1956). Custer merely surmises that *future* discovery *might* reveal such evidence.

■ In response to this assertion, defendant has filed the affidavit of Mr. Urban A. Hinders, the chief engineer responsible for the development of the accused A–10 aircraft, which states that, with the exception of certain internal details relating to sur-

---

**3.** It is also noted that, in each case, the specific claim of each patent asserted identified the claim alleged to infringe. Even if the '262 pat-

ent was impliedly asserted, no specific claim was identified as being infringed.

vivability and vulnerabiltiy of the aircraft, neither the accused aircraft nor the contracts under which they were procured were ever classified. Moreover, the affidavits offered by defendant clearly establish that no A–10 aircraft was accepted by the Government or even assembled prior to the expiration date of the '262 patent.[4] Custer has not challenged the accuracy of this affidavit; wherefore its accuracy is deemed admitted. *See First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Mere speculation as to the *possible* existence of facts which *might* toll the statute of limitations is not sufficient to give rise to a genuine issue of material fact. *See Reynolds v. Needle*, 132 F.2d 161, 162 (D.C.Cir.1942); *Carroll v. Pittsburgh Steel Co.*, 103 F.Supp. 788, 790 (W.D.Pa.1952).

We conclude that there was no administrative claim for infringement of the '262 patent which could be relied upon to toll the 6-year statute of limitations. Having concluded that the statute has not been tolled and the patent having expired more than 6 years prior to the filing of the petition, the claim as to the '262 patent is barred by the statute and the petition must be dismissed as to that patent.

### The '842 Patent

The '842 patent, issued on December 5, 1972, is entitled "Contoured Stack of Jet Engine With Channel Wing Aircraft." The patent is presently in force and will not expire until 1989. Custer, as sole owner of the '842 patent, is the only party entitled to recover for its infringement, if any. 35 U.S.C. § 151.

The '842 patent is directed to a channel wing aircraft in which a channel is located in each wing of the aircraft and the discharge end of the exhaust stack of the jet engine disposed in each of the channels is positioned slightly above and aft of the leading edge of the channel. The exhaust stack is flattened and concavely contoured so as to expel a flattened and contoured stream of air across and immediately above the surface of the open channel. The following drawings illustrate a preferred embodiment of this structure:

Front Profile

---

4. Although it is true that a contract for two of the accused structures was executed prior to the date of expiration of the patent, this court has recently held that liability for infringement accrues on the date of *delivery* of the device, not on the date of execution of the contract for the device. *See Leesona Corp. v. United States*, 220 Ct.Cl. ——, 599 F.2d 958, 202 USPQ 424, *cert. denied*, —— U.S. ——, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

Top Profile

Preferred Embodiment Of The '842 Patented Invention

---

### The Claim

Claim 1, the only claim in the patent, recites:

1. In an aircraft having an upwardly open lift channel extending generally longitudinally of the aircraft, and a jet engine for inducing air flow in said channel in a rearward direction, wherein said upwardly open channel is formed in the wing of said aircraft and extends across said wing from the leading to the trailing edge thereof;

a. said jet engine being mounted on the aircraft and the discharge end of the engine exhaust stack being disposed adjacent to and a short distance above the leading edge of the open channel;

b. said exhaust being contoured at the discharge end thereof as an elongated, flattened, channel-shaped discharge opening;

c. said discharge opening being directed substantially parallel to the surface of said open channel and rearwardly thereof for discharging all of the jet engine exhaust into said open channel adjacent to and a short distance above the leading edge thereof as a flattened, high speed stream of hot gases substantially parallel to the channel surface to provide a lift effect.

\*　　\*　　\*　　\*　　\*　　\*

### Application of the Claim to A–10 Aircraft

The accused structure is an aircraft identified by the Air Force as the A–10. The basic configuration of the A–10 is shown in the sketch below:

It is readily apparent from the illustration that the A–10 aircraft does not have an "upwardly open channel \* \* \* formed in the wing" as required by Claim 1. Moreover, the exhaust stacks of the A–10 jet engines are neither flattened nor contoured.

It is Custer's position that the entire *tail structure* of the aircraft (the combination of the tail surface, elevators, stabilizers and rudders) constitutes an "upwardly open channel" into which the exhaust of the engines is discharged "a short distance above the leading edge" of the tail surface. Custer contends that it is not necessary that the channel be formed in the wing or that the exhaust stacks be flattened or contoured to conform to the configuration of the channel.

Defendant maintains that the tail structure of the A–10 does not generate any additional lift force in combination with the engines, since the exhaust from the engines is not even directed across the surface of the tail structure. Custer refutes this contention with an affidavit to the effect that the exhaust from the A–10 engines is suffi-ciently close to the upper surfaces of the tail structure to create a lifting effect. Whether or not a lifting effect is produced, however, is not a genuine issue of material fact, since the *structure* and *relationship of elements* of the asserted claim are not to be found in the A–10 aircraft.

Thus, in the present case, even assuming, *arguendo,* that additional lift *is* produced in the *tail* structure, the question still remains whether the absence of a *flattened and contoured exhaust stack* in the engines of the A–10 aircraft and the absence of channels *in the wings* of the aircraft is sufficient to avoid infringement of the '842 patent claim, as a matter of law.

Custer asserts that even though the elements of the A–10 aircraft do not correspond to the language of the '842 patent claim, the channel formed by the elements of the tail structure in the A–10 aircraft meets the terms of the claim in substance because the channel thus formed performs substantially the same function as the wing channel defined by the claim, in substantially the same way, to accomplish substantial-

ly the same result. In other words, Custer contends he has satisfied the requirements of the judicially created doctrine of equivalents. *See, e. g., Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

 The file wrapper of the '842 patent, however, estops Custer from invoking the doctrine of equivalents since the claim was allowed over the prior art *only* after the applicant amended the antecedent claim[5] to specifically limit the location of the channel by providing that the "open channel is formed *in the wing* of said aircraft and *extends across said wing* from the leading to the trailing edge thereof." (Emphasis added.) Since the location of the channel in the *wing* of the aircraft was a prerequisite to the allowance of the claim of the '842 patent, the doctrine of equivalents may not be used to broaden the scope of the claim beyond its literal meaning. *See, e. g., Graver Tank & Manufacturing Co. v. Linde Air Products Co., supra.* Thus, the claim cannot be read on an aircraft in which the channel, if there be one, is located in the *tail* of the aircraft. In other words, a patentee may not broaden the interpretation of a claim to encompass that which he gave up by a limiting amendment which enabled him to receive a patent. *See, e. g., Christopher J. Foster, Inc. v. Newport News Shipbuilding and Dry Dock Co.,* 187 USPQ 733 (4th Cir. 1975). The A–10 aircraft does not infringe the claim in suit either in literal terms or by application of the doctrine of equivalents since both the literal terms and the reasonable equivalents of the claim are limited to location of the channel in the wing.

Even if the claim was not limited in substance, the combination of the jet engine and tail structure, disposed in the configuration shown above, will not accomplish the same result as the arrangement claimed and shown in the drawings of the patent in suit. The primary purpose of passing the

exhaust from the jet engine over the upwardly open channel formed in the *wing* of the aircraft is to enhance the stability of the aircraft during takeoff and landing, since during these times the speed of the aircraft is so low that the lift normally generated is barely sufficient to sustain aircraft maneuvers in a safe and controllable manner. *See* U. S. Patent No. 2,611,555, col. 1, lines 1–33, (which patent is incorporated by reference in the '842 patent at col. 4, line 11). If the tail structure is employed as a lift-generating channel in the A–10 aircraft as contended by Custer, the result will be the opposite of that obtained when the channel is formed in the wing. According to the unrefuted affidavit of Mr. Hinders, an aeronautical engineer and chief engineer on the Air Force A–10 program:

* * * tail lift would [be] a function of the engine thrust varying with the power setting of the engine. Thus, as power is applied for takeoff or reduced for landing, the lift on the tail would be changed. This is extremely undesirable during the critical takeoff and landing phases of aircraft flight since it would require pilot action to counter this effect either by control inputs or by retrimming the aircraft control.

The undisputed evidence of record, therefore, establishes that the A–10 structure is not the functional equivalent of the structure defined by the claim.

 The absence of a contoured exhaust stack in the A–10 jet engines is, by itself, fatal to Custer's infringement claim. Throughout the prosecution of the '842 patent, Custer repeatedly emphasized the importance of contouring the exhaust stack so as to produce a high speed stream of hot gas and represented to the Patent Office that the stack design was an "essential" feature of his invention. Even the title of the patent, "Contoured Stack of Jet Engine With Channel Wing Aircraft," reflects the

---

5. Technically, the '842 patent claim was not the result of an amendment to a previously rejected claim. Rather, after rejection of the prior claim, applicant cancelled it and added the '842 patent claim. However, inasmuch as the sub-

stance of the newly added claim was identical to the previously rejected claim (with the exception of the language quoted in the text above), we have deemed it appropriate to analyze it as an amended claim.

importance of this feature. While other features recited in the claim may also be "essential" to produce the result intended by Custer, the other features are not relied upon to distinguish the claim from the prior art. Whether an allowable claim could have been drawn to cover the A–10 structure is irrelevant. The question is not what the applicant *might have* claimed, but what he *has* claimed. *Lewis v. Pennsylvania Steel Co.*, 59 F. 129 (3d Cir. 1893). Accordingly, for this and the other reasons stated above, it is concluded that the A–10 aircraft does not infringe the '842 patent claim as a matter of law. Accordingly, defendant's motion for summary judgment of noninfringement of the Custer '842 patent is granted and the petition must be dismissed as to that patent.

### The '497 Patent

The '497 patent, issued on March 21, 1972, is entitled "Jet Propelled Channeled Aircraft." This patent is still in force and will not expire until 1989. CWC, as assignee and sole owner of the '497 patent, is the only party who was or is now entitled to recovery for its infringement, if any. 35 U.S.C. §§ 152, 261.

### A. Statute of Limitations

 Custer erroneously alleged ownership of the '497 patent in the original petition (filed April 27, 1978), CWC not having been named as a party plaintiff at that time. Leave to amend the petition was granted to allow CWC to appear as a coplaintiff and plaintiffs were permitted to amend the allegations of ownership of the respective patents. The amended petition was filed on January 12, 1979. Amendment of the petition by adding a new party to the petition does not, as to the added party, relate back to the date of filing the original petition. *See Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973). Accordingly, the 6-year statute of limitations established by 28 U.S.C. § 2501 and the extension thereof afforded by 35 U.S.C. § 286 is to be measured from the date of filing of the

amended petition on January 12, 1979 as to CWC and the '497 patent.

 Although a claim may be said to have "first accrued" when the first A–10 aircraft was delivered to defendant, each succeeding delivery would give rise to a new claim. Thus, the statute of limitations would bar recovery only as to A–10 aircraft either delivered *or used* within 6 years of the date of filing the amended petition, namely, since January 12, 1973. *See Irving Air Chute v. United States*, 117 Ct.Cl. 799, 93 F.Supp. 633 (1950). Although an administrative claim for compensation for infringement of the '497 patent was filed, it was not filed by CWC, the sole lawful owner of the '497 patent. 35 U.S.C. § 286 allows for an extension of the 6-year statute of limitations, its purpose being to afford the Government an opportunity to correct its mistakes as an alternative to costly litigation. *See Fairchild Engine & Airplane Corp. v. United States*, 152 Ct.Cl. 352, 285 F.2d 131, 128 USPQ 153 (1961). A claim filed by one not the lawful owner of the claim clearly cannot ever achieve this purpose. Accordingly, the filing of the administrative claim solely by and on behalf of Custer cannot serve to extend CWC's period of recovery.

### B. Infringement

Although recovery may not be had by CWC for any A–10 aircraft delivered to or used by defendant prior to January 12, 1973, the issue of infringement will be determined in the event any such aircraft have been delivered to or first used by defendant after January 12, 1973.

The '497 patent, essentially, relates to an aircraft in which the engines are provided with vertically and horizontally adjustable "channels" associated with the engines in such a manner as to function as ailerons.

The following drawings are annotated reproductions of figures 5 and 6 of the patent and illustrate the preferred embodiment of the invention claimed in the '497 patent.

[See following illustration]

horizontal
control
mechanism

adjustable channel

vertical
control
mechanism

engine

engine
nacelle

horizontal
control
mechanism

Preferred Embodiment Of
The '497 Patented Invention

CWC asserts that the A–10 aircraft infringes claims 1 and 3 of the '497 patent. Claim 1 is an independent claim, while claim 3 depends upon claim 2 which, in turn, is dependent upon claim 1. Claim 1 of the patent provides:

1. In a jet propelled aircraft having a fuselage, wings, and jet engines operatively mounted on said wings on opposite sides of said fuselage in laterally space relation thereto, the improvement comprising:

a. Ailerons consisting of an aft upwardly open lift channel affixed to each of said jet engines in close proximity to the discharge end thereof, and in direct line of communication with exhaust flow therefrom;

b. means mounting said channels with respect to said engines for vertical angular adjustment with respect to said engine and the exhaust flow therefrom; and

c. means operable to selectively implement the angular adjustment, said channels constituting vertical lift surfaces normal to the longitudinal axis thereof, whereby, through lift created thereby due to exhaust gas flow therethrough, upon angular adjustment,

function as ailerons to steer said aircraft at slow speeds.

\* \* \* \* \* \*

It is immediately apparent from an examination of the structure of the A–10 aircraft (*see* sketch, *supra*, at p. 9) that it does not literally respond to a number of limitations present in claim 1. The A–10 engines are not "mounted on [the] wings"; they are mounted on the fuselage. There does not appear to be an "aft upwardly open lift channel *affixed* to each of [the] jet engines." (Emphasis added.) To the extent that the tail structure of the A–10 is purported to constitute the "channel," it is not *affixed* to the engines. There are no "means mounting [any] channels \* \* \* for vertical angular adjustment." Again, to the extent that the A–10 tail structure is purported to constitute a "channel," only the rudders and elevators are horizontally or vertically adjustable and they do not function as ailerons.[6] Neither does there appear to be any "means operable to selectively implement [an] angular adjustment" of the tail structure in the manner contemplated by Custer.

When the '497 application was filed, the following independent claim was presented:

1. In jet propelled aircraft including at least one jet engine longitudinally disposed therewith, an upwardly opening lift channel affixed to said jet engine and with an end thereof in close proximity to a fluid flow opening of said jet engine.

This very broad claim was rejected (along with the remaining dependent claims) as being fully anticipated by the prior art. In response to the examiner's rejection, claim 1 was cancelled and the following claim substituted:

25. In a jet propelled aircraft having a fuselage and a wing, the improvement comprising:

a) jet engines operatively mounted on said wings on opposite sides of said fuselage in laterally spaced relation thereto;

b) an aft upwardly open lift channel affixed to each of said jet engines in close proximity to the discharge end thereof, and in direct line of communication with exhaust flow therefrom;

c) means mounting said channels with respect to said engines for vertical angular adjustment with respect to said engine and the exhaust flow therefrom; and

d) means operable to selectively implement the angular adjustment, whereby said channels through lift created thereby due to exhaust gas flow therethrough function as ailerons to steer said aircraft at slow speeds.

Among the arguments offered by the applicant for allowance of the substituted claim was that the vertically adjustable channels "at the trailing edge of each engine \* \* \* function as ailerons to lift the wing up or down," and that when "you deflect the channel downward, the aircraft would rise from the reaction of the atmospheric pressure \* \* \* and not from the deflection of the gases which had passed through the channel." The examiner, however, was not persuaded and again rejected all of the claims, including the newly added claim 25, pointing out to the applicant that the prior art "discloses [among other things] a vertically and horizontally movable aft channel."

---

6. One of the affidavits submitted by plaintiffs states that "the wing [of the A–10] contains a large *adjustable* flap which may be extended from the trailing edge of the wing an estimated distance of at least eighteen inches and which increases the surface of the wing until the trailing edge of the flap extends longitudinally to a distance well behind and under the throat of the engine. \* \* \* Use of these flaps at low speeds will enhance the channel effect when it is most needed, that is, during takeoff, landing and slow flight maneuvers." (Emphasis added.) The affidavit does not state, however, that this flap is adjustable for *vertical angular* movement or horizontal movement *normal to the direction of flight*, nor do we interpret the quoted language to suggest that either is the case. Rather, the statement is interpreted as meaning only that the flap is adjustable in a horizontal *plane* substantially parallel to the direction of flight. Accordingly, we conclude for purposes of these motions that the A–10 aircraft does not have a channel capable of *vertical angular* movement.

A conference was then held between the applicant's attorney and the examiner. Subsequently, an amendment was filed which cancelled claim 25 and substituted the following claim:

29. In a jet propelled aircraft having a fuselage, wings, and jet engines operatively mounted on said wings on opposite sides of said fuselage in laterally spaced relation thereto, the improvement comprising:

a) ailerons consisting of an aft upwardly open lift channel affixed to each of said jet engines in close proximity to the discharge end thereof, and in direct line of communication with exhaust flow therefrom;

b) means mounting said channels with respect to said engines for vertical angular adjustment with respect to said engine and the exhaust flow therefrom; and

c) means operable to selectively implement the angular adjustment, said channels constituting vertical lift surfaces normal to the longitudinal axis thereof, whereby, through lift created thereby due to exhaust gas flow therethrough, upon angular adjustment, function as ailerons to steer said aircraft at slow speeds.

As is obvious from a comparison of the language of newly added claim 29 and previously rejected claim 25, the sole substantive difference between the two claims is the presence in claim 29 of the words "ailerons [7] consisting of" to describe the upwardly open lift channel. In the remarks which accompanied the amendment, the applicant at no point argued that the examiner's previous rejection of claim 25 was erroneous. Instead, the applicant repeatedly emphasized the importance of "ailerons," the newly added claim language:

*As discussed during the conference, none of the patents of record show or teach the use of Custer channels as ailerons.* Also as pointed out, the principle of the Custer channel is the creation of lift forces normal to the longitudinal axis of the channel which is a highly effective factor at low speed operation of aircraft. The use of this principle for aileron or roll control of aircraft is certainly not taught [in the prior art] patents. *In [a prior art patent]* * * * *[n]o control is taught or suggested* * * *

*[In another prior art patent,]* * * * *there is no teaching or suggestion of roll control by means of ailerons in the nature of Custer channels.*

The present application shows the channels fore and aft of a jet engine. *This is a different structure from the prior [art] patents where the channels are a stationary part of a nacelle and fuselage and not a part of the engine structure.* * * * *The control factor imparted to the aircraft by use of this principle of the Custer channel used as ailerons at very low speeds is of extreme significance. In low speed or under conditions proximating a stall, the availability of roll control is very important.* At the same time, the lift contributed by the Custer channels at the leading edge of the wing is of importance in maintaining the aircraft at slow speeds, such as when the entire wing has stalled.

* * * *[Another prior art patent]* obviously does not teach the use of adjustable channels,* and, therefore, adds nothing to the disclosures of [other prior art] in suggesting or teaching the present invention.

For the foregoing reasons, claim 29 is urged as being presently allowable. [Emphasis added.]

Claim 29 was then allowed as presented and became claim 1 of the patent.

---

7. Webster's New World Dictionary (1968 ed.) contains the following definition of an aileron: "n. a movable hinged section of the wing of an airplane, *for banking in turns.*" (Emphasis added.) The patent specification also mentions these ailerons in a manner consistent with this definition: "Aft channels, if used on the out- board engines, can be so oppositely adjustably controlled, if desired, as to replace or work in conjunction with standard ailerons in an obvious manner, and this would create positive and high efficiency lateral control for the aircraft." Col. 2, lines 61–65.

The prosecution history clearly demonstrates that the inclusion of language defining the vertically adjustable open channel as the equivalent of an aileron to provide *roll control* was essential to allowance of the claim. Not only was the "aileron" limitation the sole difference between the allowed claim and the previously rejected claim, but also in the remarks which accompanied the amendment in which the claim was present, the applicant repeatedly represented to the Patent Office that this special type of aileron was not disclosed in the prior art and that this difference was of "extreme significance." To accept CWC's argument now that the A–10 structure infringes claim 1 (even though it admittedly lacks a vertically adjustable open channel functioning as an aileron) would require this court to eliminate from the claim the very limitation upon which its allowance was predicated. Although the doctrine of equivalents may be used to enlarge the scope of a claim beyond its literal meaning, *see, e. g., Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), as we have previously pointed out, this doctrine cannot be used to broaden the scope of the claim to encompass subject matter which the applicant expressly surrendered by a limiting amendment in order to obtain allowance of the claim. *See, e. g., Christopher J. Foster, Inc. v. Newport News Shipbuilding and Dry Dock Co.*, 187 USPQ 733 (4th Cir. 1975). Thus, the absence of a vertically adjustable open channel *functioning as an aileron* in the A–10 aircraft, as a matter of fact, leads to the conclusion that, as a matter of law, plaintiffs' claim is not infringed. Since the remaining asserted claim, *i. e.*, claim 3, is dependent from claim 1, it follows, as a matter of law, that it likewise is not infringed by the A–10 aircraft structure. *Teledyne McCormick Selph v. United States*, 214 Ct.Cl. 672, 558 F.2d 1000, 195 USPQ 261 (1977); *Dresser Industries, Inc. v. United States*, 193 Ct.Cl. 140, 432 F.2d 787, 167 USPQ 473 (1970). In view of the foregoing, there being no dispute as to any genuine issue of material fact, defendant is entitled to judgment on its motion and supplemental motion for summary judgment for noninfringement of the '497 patent as a matter of law.

### SUMMARY AND CONCLUSION

Based on the material facts of record, none of which are subject to dispute, we conclude as a matter of law that defendant's accused A–10 aircraft does not infringe the asserted claims in either the '497 or '842 patents, and that recovery for infringement of the '262 patent is barred by the statute of limitations. Accordingly, defendant's motion and supplemental motion for summary judgment are granted and the petition is dismissed.