**MOTOROLA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 38–79C.

United States Claims Court.

Oct. 2, 1987.

OPINION

BRUGGINK, Judge.

In previous decisions of our predecessor court, defendant was found liable for taking of a patent license held by plaintiff, Motorola, Inc. The case is before this court on remand for accounting of damages. Pending presently are defendant's motion for partial summary judgment and plaintiff's cross-motion for summary judgment. Both relate solely to the effect of the running of the statute of limitations on Motorola's claim. For the reasons stated herein, defendant's motion is granted and plaintiff's cross motion denied.

BACKGROUND OF THE CASE

Motorola brought this action pursuant to 28 U.S.C. § 1498 (1982), alleging that the procurement of radar transponders constituted manufacture or use by or for the Government of a device covered by its U.S. Patent No. 3,383,680 ("Diven Patent"). This patent was issued to Motorola in 1968 as assignee of inventor Liscum Diven. After a trial in the Court of Claims limited to the issue of liability, the trial judge held that the Diven Patent was valid and had been infringed by the procurement of a transponder designated as AN/PPN–18 ("PPN–18"), but that it had not been infringed by a transponder designated as AN/TPN–28. The trial opinion was affirmed. *Motorola, Inc. v. United States*, 229 Ct.Cl. 482 (1981), *aff'g and adopting* 209 U.S.P.Q. 769 (Ct.Cl.Trial Div.1980). The matter was remanded for an accounting, and eventually transferred to this court. During remand, the parties filed cross motions for summary judgment on several issues. We held that 35 U.S.C. § 287 (1982) (marking and notice) prevented Motorola from recovering. The action was dismissed and other grounds for summary judgment were not addressed. *Motorola, Inc. v. United States*, 1 Cl.Ct. 131 (1983). On appeal, that decision was reversed on the ground that 28 U.S.C. § 1498 did not incorporate 35 U.S.C. § 287 as an assertible defense. The case was again remanded for an accounting of the reasonable and just compensation due plaintiff.

Eugene A. Parsons, Phoenix, Ariz., for plaintiff.

John Fargo, with whom were Asst. Atty. Gen., Richard K. Willard and Vito J. DiPietro, Washington, D.C., for defendant.

*Motorola, Inc. v. United States,* 729 F.2d 765 (Fed.Cir.1984). The parties have now renewed their dispositive motions with regard to the effect of the limitations period.

### FACTS

At the request of the Marine Corps, the Syracuse Research Corporation ("SRC") developed a specification in 1966–1967 for a radar transponder. It was to operate at a fixed frequency and enable aircraft to identify ground troops in Southeast Asia. At that time, only Motorola and Vega Precision Labs, Inc. ("Vega") produced commercially available transponders. SRC purchased on behalf of the Corps ten transponders from Motorola and ten transponders from Vega for evaluation. As a result of that evaluation, the Motorola transponder was chosen. The Corps then procured thirty transponders directly from Motorola under contract No. M00027–69–0070 ('0070 contract) in the last quarter of 1968. These transponders were Motorola's Commercial Model SST–122KU.

After the initial procurement, the Corps decided in May 1969 to purchase 112 additional radar transponders and issued Request for Proposal No. M00027–69–R–0584 ("1969 RFP") in July 1969. The RFP was preceded by transponder specification HQPD 69–3, issued in May 1969. HQPD 69–3 was almost identical to the specification developed previously by SRC. The aspects of HQPD 69–3 relevant to the issues in this case were that the receiver utilize a crystal video detector, and that it "be capable of responding with a double or triple pulse within a space of 40 microseconds utilizing one modulator."

By Solicitation, Offer and Award Form No. 33–124 accompanying the RFP, the Marine Corps required that all bidders have a Department of Defense security clearance up to and including the level of "Secret." Also included was a contract security specification, DD Form 254. Defendant submits the uncontested affidavit of Elsie J. Tuma, security officer at Vega, which states that the security specification required only that information revealing the frequency or code of the transponder was to be classi-fied. The affidavit continues, "Drawings, manuals, or other written material that did not disclose either frequency or code was [sic] not to be classified."

The Marine Corps received proposals from Vega, Control Science Corporation, Avion Electronics Division of the G.C. Dewey Corporation ("Avion"), Sterling Laboratories ("Sterling"), and Motorola. Motorola's proposal included a complete description of the Diven Patent and a copy of the Operation and Maintenance Manual for the SST–122KU as prepared for the Marine Corps under the '0070 Contract.

Vega's proposal was accepted and it entered into Contract No. M00027–70–0014 ("'0014 Contract") with the Corps for the procurement of 112 transponders. Both the 1969 RFP and the '0014 Contract incorporated by reference a patent indemnity clause pursuant to Armed Services Procurement Regulations ("A.S.P.R.") § 7–104.5 (Aug. 1969).

By letter of August 1, 1969, the Corps informed Motorola that its proposal was unsuccessful and that the contract had been awarded to Vega. Motorola responded by letter of August 8, requesting assurance that Vega had corrected what Motorola asserted was previous poor performance of Vega's transponder and that Vega could meet the required delivery schedule. Specifically, the letter stated that the Vega prototype had received twenty-four unsatisfactory reports, some major and uncorrectable, as opposed to three minor unsatisfactory reports for Motorola's transponder. In addition, the letter stated that the Vega prototype used a superheterodyne design with a vacuum tube oscillator resulting in extensive frequency drift, whereas the Motorola SST–122KU used a crystal video receiver.

By letter of August 25, 1969, the Corps responded that as a result of the technical evaluation, Vega's proposal ranked highest with 91.5 points, while Motorola's ranked lowest with 62.5 points. Additionally, the letter stated that the Corps judged Vega to be a responsible bidder within the meaning of the A.S.P.R. It concluded that because the Motorola proposal had several weak-

nesses, Motorola should contact the Corps for an appointment to discuss the proposal. Motorola did not respond to this letter. Subsequently, the Corps procured 112 Model AN/PPN–18 transponders from Vega. Vega delivered the equipment between December 1969 and April 1971.

In December 1975, Motorola received Request for Proposal No. M00027–76–R–0005 ("1975 RFP"), a follow-on solicitation for transponders issued by the Corps. Schematic diagrams of the Vega AN/PPN–18 transponder accompanied the request. Motorola responded with a technical proposal, dated February 25, 1976, submitted along with a four page cover letter. In the midst of describing the proposal in the cover letter, Motorola stated that the Diven Patent applied against the diagram of the AN/PPN–18 transponder. Without in any way pursuing that assertion, the letter then went on to discuss other aspects of the solicitation. Motorola did not make a request for compensation in the letter.

Motorola subsequently made a formal administrative claim for patent infringement. It was received by the Navy on April 22, 1976. This claim alleged that the AN/PPN–18 transponders previously purchased pursuant to the 1969 RFP infringed the Diven Patent. The claim went on to assert that the Air Force was conducting a solicitation for a transponder that might also infringe the patent. On January 3, 1979, Motorola received from the Navy an undated letter that denied Motorola's claim. The Navy asserted that the Diven Patent was not valid and that, in any event, it was not infringed by the Vega transponder. The denial letter referred to Patent No. 3,380,680. The correct number was 3,383,-680. The address also contained an incorrect zip code. Motorola filed its complaint in our predecessor court on January 31, 1979.

## DISCUSSION

The pending motion and cross motion for summary judgment present the following questions: (1) Did the defendant conceal its acts so that Motorola was unaware of the existence of its claim, thereby tolling the statute of limitations?; (2) Did Motorola's February 25, 1976 letter constitute an administrative claim, also thereby tolling the statute of limitations?; (3) Did the letter Motorola received on January 3, 1979 from the Navy deny its formal administrative claim of April 1976, thereby allowing the statute of limitations to begin running again?

The court may grant a motion for summary judgment pursuant to RUSCC 56(c) only when no genuine issue of material fact exists and when the movant is entitled to judgment as a matter of law. *See South Louisiana Grain Servs., Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). Although Motorola opposes defendant's motion on the ground that there are unresolved factual issues, the court does not find any such issues to be material.

In order for Motorola to recover for an infringement, it must have brought its action within six years from the time a claim first accrued. 28 U.S.C. § 2501 (1982). The limitations period is jurisdictional and cannot be waived. *Farrell v. United States*, 9 Cl.Ct. 757, 759 (1986). Under 28 U.S.C. § 1498, a claim accrues upon the first unauthorized manufacture or use of a patented invention by or for the government. *Starobin v. United States*, 229 Ct.Cl. 67, 71, 662 F.2d 747, 748 (1981). Unless there is direct evidence as to first manufacture, the date an item is delivered to the government is traditionally seen as the accrual date. *See Tektronix, Inc. v. United States*, 216 Ct.Cl. 144, 151–52, 575 F.2d 832, 837, *cert. denied*, 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 707 (1978); *Coakwell v. United States*, 178 Ct.Cl. 654, 658–59, 372 F.2d 508, 511 (1967).

In this case, the infringing transponders were delivered between December 1969 and April 1971. Motorola filed its petition on January 31, 1979. Consequently, application of the jurisdictional six-year limitations period would bar Motorola from any recovery because all manufacture or deliveries occurred before January 31, 1973, unless the limitations period was extended by tolling. The period may be extended in two ways that are applicable to this case. Un-

der 35 U.S.C. § 286, the period of limitations can be tolled for up to six years during the pendency of an administrative claim. *Bendix Corp. v. United States*, 230 Ct.Cl. 247, 676 F.2d 606 (1982). As will be discussed subsequently, plaintiff is entitled to some tolling here because of the processing of its administrative claim. The question is when that period began and ended.

The limitations period may also be tolled according to the rule announced in *Japanese War Notes Claimants Ass'n of the Philippines v. United States*, 178 Ct.Cl. 630, 373 F.2d 356, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967):

> In certain circumstances the running of the statute will be suspended when an accrual date has been ascertained but plaintiff does not know of his claim. Ignorance of rights which should be known is not enough.... Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was "inherently unknowable" at the accrual date.... In this situation the statute will not begin to run until plaintiff learns or reasonably should have learned of his cause of action.... Once plaintiff is on inquiry that it has a potential claim, the statute can start to run.

*Id.* at 634, 373 F.2d at 358–59 (citations omitted).

The *Japanese War Notes* rule requires a two-step investigation. First, Motorola must show that the Government concealed its acts so that it was ignorant of them or that the injury was "inherently unknowable." If such concealment or inherent unknowability is found, the court must determine the time when plaintiff was first on inquiry of its potential claim. A mere lack of knowledge of the existence of facts which constitute a cause of action will not toll the operation of the limitations period. *Custer v. United States*, 224 Ct.Cl. 140, 147–48, 622 F.2d 544, 558 (1980). However, concealed acts will toll the statute if the

concealment causes the plaintiff to be "unaware of the existence of a cause of action." *Willcox v. United States*, 3 Cl.Ct. 83, 85 (1983), *aff'd*, 769 F.2d 743 (Fed.Cir. 1985). In this case, plaintiff does not argue inherent unknowability, but that the Government concealed its infringement.[1]

### A. Concealment

In cases outside the patent context, courts have generally required evidence of fraudulent activity on the part of the Government to find concealment. For example, the United States Air Force's failure to release the names of individual officers on its promotion board did not constitute fraudulent concealment of the number of reserve officers on the board. *Willcox* 769 F.2d at 745. Similarly, the fact that the Government informed some but not all landowners of the opportunity to repurchase real property previously condemned under the Emergency War Powers Act was not concealment. *Bellamy v. United States*, 7 Cl.Ct. 720, 725 (1985). And in *McDonnal v. United States*, 9 Cl.Ct. 629 (1986), Government notification to tax authorities that an entire lot had been conveyed, when in fact a portion had been excepted from the conveyance, did not constitute concealment.

In the present case Motorola's argument is based on two allegations: that the Government concealed knowledge that the AN/PPN–18 transponder infringed on the Diven Patent; and that it falsely gave the impression that it was procuring the Vega prototype transponder.

In support of its first allegation, Motorola argues initially that the description of the Diven Patent that it provided as part of its proposal in response to the 1969 RFP shows that the Corps knew of the infringing character of Vega's submission. However, Motorola simply informed the Corps that its patented modulator would provide the performance called for in the specifications. Motorola alleges no other facts to support a conclusion that the Corps

---

**1.** Although in its petition Motorola claimed in the alternative that its patent infringement claim was inherently unknowable, it does not raise this issue in its motion for summary judgment. The court would, in any event, reject the argument for the reasons discussed *infra*.

knew that another contractor's design necessarily infringed the Diven Patent. The court is not prepared to conclude that mere knowledge that Motorola's modulator was patented is sufficient to show knowledge that Vega's transponder infringed the patent.

■ The second basis for Motorola's contention that the Corps knew of the infringement concerns a sole source procurement in December 1969 of twelve additional transponders from Vega. Although that procurement is not part of Motorola's claim here, Motorola relies on the statement of the technical project officer in justification of going "sole source" that "[t]he AN/PPN-18 is a new militarized version" of Motorola's commercial transponder. This statement does not prove that the Corps knew that Motorola's patent was infringed for several reasons.

The officer's statement must be seen in context. In December 1969, the only existing contract for the transponders was with Vega. Nevertheless, reference to the Motorola SST-122KU transponder would have been natural because the military was familiar with it from the earlier procurement. The recognition of similarity between two items does not prove patent infringement, however, which must be determined by comparing an accused device with the claims of the patent. *See Teledyne McCormick Selph v. United States,* 214 Ct.Cl. 672, 685, 558 F.2d 1000, 1007 (1977). Motorola alleges no facts that indicate that the Government analyzed the PPN-18 against the claims of the Diven Patent at any time, much less that it concluded there was infringement. Finally and most importantly, three words in the statement—"new," "militarized," and "version"—all imply the officer believed the Vega transponder to be something different than the Motorola SST-122KU.

■ Motorola's second major allegation—that the Marine Corps falsely created the impression that it was contracting for the Vega prototype transponder—also fails. Here, Motorola relies on the Government's August 25, 1969 letter. In its August 8 letter, Motorola had merely requested that the Corps give assurance that the defects in Vega's prototype had been cured. Nothing in the Corps' response indicates that it was contracting specifically for Vega prototype transponders. The letter was not false in that respect. Nor does the court view it as deceptive. Indeed, Motorola should have inferred that the Government was not procuring the Vega prototype transponder because, as Motorola knew, the prototype utilized a vacuum tube oscillator and superheterodyne design, while design requirements called for a crystal video detector. Motorola's August 8 letter itself indicates that Motorola suspected that the prototype design was incapable of meeting contract requirements. Motorola's inferences are not sufficient to prove that the Government concealed anything.

Motorola also supports its argument by pointing to a patent indemnity clause included in both the '0584 Request and the '0014 Contract. Pursuant to A.S.P.R. § 9.103.1(a), such a clause may be included in an RFP or contract only if an agency has concluded that the item to be procured is available on the commercial market. Motorola reasons that because only it and Vega produced commercial transponders in 1969, in order to be properly included the clause had to refer to one of their prototype transponders. Motorola argues that because the August 25th letter stated that the Motorola transponder rated lowest of the five, the only reasonable conclusion to be drawn is that the indemnity clause must refer to the Vega prototype. Motorola concludes that the August 25th letter was thus written for the purpose of encouraging an erroneous impression that the Corps was procuring the Vega prototype.

Motorola's argument consists of inferences built upon inferences. The conclusion that the use of the indemnity clause in the May 1969 RFP was part of a scheme to deceive Motorola that included the otherwise apparently unpredicted letter of August 25th is so attenuated that it utterly fails to convince the court. The indemnity clause is a form provision included in RFP's and contracts so that the Government does not have to consider potential

patent infringements and can simply focus on the merits of the technical proposal and/or cost in making its award. At an earlier stage in this litigation the Court of Appeals for the Federal Circuit commented on the purpose for including the indemnity clause here:

> It must be assumed that the authorization and consent clause was included for the purpose of invoking the provisions of section 1498, Title 28, United States Code, so that, in conjunction with a bidder's required agreement to indemnify the United States against loss, all bids would be for consideration on a common basis, whether or not the equipment which the Government desired to purchase could be produced by some of the bidders without infringing one or more existing patents.

*Motorola, Inc.*, 729 F.2d at 771 (quoting *Herbert Cooper Co.*, 38 Comp.Gen. 276, 277 (1958)). In the event that defendant was attempting to conceal its acts, it is unlikely that it would employ the patent indemnity clause to help encourage a false belief. The success of its concealment would require Motorola to construe the inclusion of the indemnity clause and the August 25th letter in the same strained manner that the court finds implausible. Without such a reaction, the alleged deception would not succeed. Moreover, it flies squarely in the face of a heavy presumption that Government officials act correctly, honestly, and in good faith. *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979); *Wathen v. United States*, 208 Ct.Cl. 342, 354, 527 F.2d 1191, 1198 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).

Although the court has not been made aware of any case involving the taking of a patent license in which concealment was found, Motorola points to *Spevack v. United States*, 182 Ct.Cl. 884, 390 F.2d 977 (1968) as being analogous. Spevack claimed that the Government breached an implied contract by making unauthorized use of his ideas to limit pipe corrosion problems that occurred in the process of making heavy water. The court found that the Government concealed its acts by operating its heavy water plants in secrecy for a four-year period. As a result, the statute of limitations did not bar Spevack's claim despite the fact that more than six years had passed since his claim first accrued. The Government's concealment tolled the statute until Spevack could be reasonably aware of his potential claim. *Spevack*, 182 Ct.Cl. at 890, 390 F.2d at 981.

Despite Motorola's contentions, its case is not directly analogous to *Spevack* for a number of reasons. In *Spevack* the operation of heavy water plants was secret. Spevack did not have access to classified information pertaining to the problem of pipe corrosion, and unclassified documents that would have put him on inquiry were unpublicized and of extremely limited availability. *Spevack*, 182 Ct.Cl. at 894, 390 F.2d at 984.

In contrast, the facts of this case show that Motorola had access to evidence of infringement as early as 1969. Because of its participation in the bidding process, Motorola knew: the specifications for the transponder; that its patented modulator would perform according to specifications;[2] that Vega's prototype utilized a technology that Motorola believed, according to its August 8, 1969 letter, was incapable of meeting specification requirements; and that the contract was nevertheless awarded to Vega. This conclusion is supported by the affidavit of John A. Monson, a research engineer at SRC. The affidavit focuses on specification 3.6.1.3.2 of the 1969 RFP. Monson states that in order to meet this specification, the design of any transponder would require that the pulses be commutated in a manner similar to the Diven scheme because traditional line type transponders

---

2. Motorola recognized the applicability of the Diven Patent to this specification, stating in its proposal to the '0584 Request, "The commutating modulator that will provide the coding shown in Table I is a Motorola patented approval (United States Patent No. 3,383,680 dated May 14, 196[8], Liscum Diven, Assignor to Motorola) that will be supplied to the Marine Corps at no added cost. This approach allows a single modulator to be used as specified in the HQPD 69–3 requirement paragraph 3.6.1.3.2." Defendant's Supplemental Appendix at 10.

were incapable of responding as quickly as the specification required, i.e., the transponder's output codes required a period of more than one interrogation to respond, unless more than one modulator were used. Commutation allows different portions of the code to be received in different time frames with the use of a single modulator. The affidavit concludes that Motorola "knew or should have known that any transponder which met the HQPD 69-3 specification would necessarily perform the same function as the '680 patent and achieve the same result as the '680 patent."

Rather than dispute the content of Monson's statements or his conclusion, Motorola contends that the affidavit is inconclusive. Motorola argues that the Monson affidavit does not demonstrate that it should have reasonably known of its claim because Monson's conclusion does not state the applicable test for the taking of a patent license announced in *Autogiro Co. v. United States*, 181 Ct.Cl. 55, 384 F.2d 391 (1967). *Autogiro* states that in order for a device to infringe on a patent, it must perform the same function in substantially the same way to accomplish substantially the same result. 181 Ct.Cl. at 66, 384 F.2d at 399-400.

The issue is not infringement, *vel non*, however, but whether defendant concealed the infringement, or whether Motorola was on inquiry. Motorola does not need to be aware of every element of its claim to be put on inquiry notice.[3] *Oceanic Steamship Co. v. United States*, 218 Ct.Cl. 87, 108, 586 F.2d 774, 786 (1978). The knowledge that any bidder would have to use a switch to commutate pulses over a period of more than one interrogation when Motorola possessed a patent for such a device should have been enough for Motorola to reason that it had a potential claim.

An additional distinction from *Spevack* is that here, Motorola's access to materials which could have confirmed its suspicions that it had a potential claim was not barred

by security classifications. Only information relating to frequency or code was classified—data not material to the infringement of the Diven Patent.

Finally, the August 25th letter invited Motorola personnel to further discuss the proposal. Motorola declined the offer, demonstrating that it did not exercise reasonable diligence. *See Mitchell v. United States*, 10 Cl.Ct. 63, 67 (1986); *Crown Coat Front Co. v. United States*, 275 F.Supp. 10, 16 (S.D.N.Y.1967), *aff'd*, 395 F.2d 160 (2d Cir.), *cert. denied*, 393 U.S. 853, 89 S.Ct. 123, 21 L.Ed.2d 122 (1968).

The undisputed record demonstrates no basis for Motorola's attempt to toll the limitations period based on the *Japanese War Notes* exception.

### B. *The Administrative Claim*

■ The second issue raised by the parties in their cross motions for summary judgment is whether Motorola's letter of February 25, 1976 constituted an administrative claim sufficient to toll the statute of limitations. If Motorola is correct, an additional fifty-five day period would be added to the time span during which Motorola could recover for takings of its patent license. This period includes the shipment of twenty transponders on April 20, 1970 and four transponders on May 21, 1970.

Section 286 of 35 U.S.C. provides that In the case of claims against the United States Government for use of a patented invention, the period before bringing suit, up to six years, between the date of receipt of a written claim for compensation by the department or agency of the Government having authority to settle such claim, and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as part of the period referred to in the preceding paragraph. 35 U.S.C. § 286 (1982). A maximum of six years (if the administrative claim is pending that long) may thus be added to the

---

3. Similarly, the fact that the transponder designs from Avion, Controlled Science Corp., and Sterling were ranked higher than Motorola's but do not infringe does not assist Motorola's case.

It still should have been aware of a potential claim as a result of the modulator specifications.

six-year recovery period for the taking of a patent license. *Bendix Corp. v. United States*, 230 Ct.Cl. 247, 253–54, 676 F.2d 606, 609 (1982). The purpose of the tolling provision is to give the Government "the opportunity of correcting its mistakes after due deliberation." *Custer*, 224 Ct.Cl. at 147, 622 F.2d at 558 (quoting *Fairchild Engine & Airplane Corp. v. United States*, 152 Ct.Cl. 352, 356, 285 F.2d 131, 133 (1961). For this purpose to be fulfilled, a writing must be calculated to make a Government officer reasonably aware that a claim is being made. *See Custer*, 224 Ct.Cl. at 147, 622 F.2d at 558.

Motorola's alleged administrative claim consists of a one-sentence paragraph contained in the four-page cover letter to its technical proposal. The sentence reads:

> During the review of this proposal by Motorola's Chief Engineer, it came to our attention that Motorola United States patent number 3,383,680 entitled "A Multi-Pulse Modulator for Radar Transponder" applies against the transponder of the subject proposal as illustrated in the schematic drawing supplied to Motorola with the AN/PPN proposal data package.

The applicable regulations require an administrative patent claim to include "a request for compensation, either express or implied," and a "designation of at least one claim of each patent alleged to be infringed." 32 C.F.R. § 9–404(a) (1975). The paragraph in question cannot be reasonably construed to be a request for compensation or a letter from which the reader would recognize that Motorola was making an administrative claim, especially when the bulk of the letter is a substantive response to the '0005 solicitation.

■ Motorola argues, however, that § 9–404(d) requires the Marine Corps to respond to a deficient patent infringement allegation by giving notice of the deficiencies to the claimant. Because this procedure was not followed, Motorola argues that the government should be estopped from denying that the February 25th letter constituted an administrative claim. However, since the letter could not reasonably

be read to constitute an administrative claim, there was no duty for the Corps to respond. *See Custer*, 224 Ct.Cl. at 147, 622 F.2d at 558.

Motorola's entire argument with regard to the February 25th letter also suffers from the fact that Motorola did not treat the letter as a claim when it filed its petition in the Court of Claims in 1979. Paragraph four of the petition states that Motorola filed a written claim for compensation with the Department of the Navy dated April 20, 1976. This is undoubtedly the claim that the Navy received on April 22nd, which it then addressed in its 1979 denial. Because Motorola itself did not treat the February 25th letter as an administrative claim, it is difficult for the court to see why the Navy should have treated the letter as a claim, even a technically deficient one. The court thus concludes that Motorola's February 25th letter did not constitute an administrative claim.

### C. *Letter Denying Motorola's Administrative Claim*

Motorola argues that the letter it received from the Navy on January 3, 1979 did not effectively deny its formal administrative claim of April 20, 1976, so that in effect, the limitations period never began running again. In support of its argument, Motorola relies on several undisputed facts: the Navy's denial letter was undated; it referred to an incorrect patent number; it was addressed with an incorrect zip code; and it did not mention Motorola's claim against the Air Force AN/TPN–28 transponder. Motorola also contends that the letter did not contain a valid denial, a claim disputed by the Government.

■ There is no question that Motorola received the denial letter on January 3, as it stamped that date on the letter. *Motorola, Inc.*, 729 F.2d at 767. The court can therefore safely assume the letter was mailed. The administrative claim is considered pending only up until the mailing date. 35 U.S.C. § 286. The calendar for December 1978—January 1979 shows that January 2 was a business day. The next previous business day was December 29,

1978. Defendant submits the affidavit of Frank G. Nieman which recites that the file copy was stamped December 29, 1978. The affidavit also recites that it was usual office practice to stamp letters on the date mailed. Plaintiff has not controverted the affidavit. Instead, it merely argues that the incorrect zip code contravenes any otherwise permissible inferences of usual office practice. Presumably it would never be usual office practice to use an incorrect zip code. The usual practice with respect to stamping on the date of mailing is totally unrelated in the court's view and it therefore treats the defendant's affidavit as unaffected. If anything, an incorrect zip code would merely add to the inherent unlikelihood that a letter mailed in Arlington, Virginia would arrive in Phoenix, Arizona the next day. The court finds that the letter was mailed December 29, 1978. By using December 29 as the mailing date, Motorola does not suffer any prejudice because it maximizes the period that the claim was pending. The fact that the letter was undated thus does not make it an ineffective denial.

■ The question of whether the incorrect zip code and the incorrect patent number bar the effectiveness of the denial letter depends on whether these circumstances prevented Motorola from realizing that its claim had been denied. The patent number referred to in the letter only differed by one digit from the number assigned to the Diven Patent. Moreover, the letter refers to the administrative claim dated April 20, 1976 concerning specifically the alleged infringement of the Diven Patent by the Marine Corps' procurement of transponders from Vega. There could not have been any confusion in the minds of Motorola employees. Although the address on the envelope contained the wrong zip code, there is no question the letter was delivered to Motorola. Consequently, Motorola appears to be relying on nothing more than typographical errors in asserting that the denial was ineffective. Motorola certainly seemed to treat the letter as a denial when it filed its Petition in the Court of Claims less than one month after receipt.

Motorola also argues that the denial letter was ineffective because it did not address Motorola's claim that the Air Force transponder AN/TPN-28 infringed on the Diven Patent. In its formal claim dated April 20, 1986 to the Navy, Motorola refers exclusively to Marine procurement of the AN/PPN-18 transponder, except for the statement that "there is now a current Solicitation No. F19628-76-R-0198 from the United States Air Force for a Dual Band Transponder Set which Motorola, Inc. believes utilizes the patented technology." This statement does not assert a claim of infringement, but rather the possibility of infringement which might be discovered upon further investigation. As a result, there was no need for the Navy response to address the AN/TPN-28.

■ Motorola's final argument is that the letter received January 3, 1979 was ineffective because it did not contain a "reasonable rationale" for denial as required by 32 C.F.R. § 9-407. This argument is without merit. The letter clearly states that the claim was rejected because the Diven Patent was invalid and because it was not infringed. Both reasons for denial were explained in sufficient detail in the letter. The court concludes that the limitations period began running again on December 29, 1978.

### D. Shipments of May 25, 1970

■ Based on the foregoing, Motorola can only recover for actions on or after May 25, 1970.[4] The Government does not

---

4. Defendant determines this date by counting back from the January 31, 1979, filing date of Motorola's petition the six-year limitations period plus the time during which Motorola's administrative claim was pending. This period comes to a total of eight years, eight months, and seven days. Motorola contradicts the Government's assertion that May 25, 1970 is the critical date for the limitations period only insofar as it argues that the statute of limitations was tolled by concealment and by pendency of the administrative claim. Motorola does not otherwise challenge the Government's calculation.

Utilizing a calculation method based on an absolute number of days rather than years and

contest Motorola's right to recover for ten transponders delivered after this date. This leaves in issue eight transponders that the government inspected and accepted on May 21, 1970,[5] but which Vega did not deliver until May 25. As discussed earlier, a taking occurs upon the first manufacture or use by or for the government of that specific device.

It is undisputed that an authorized government respresentative accepted shipments VPL 0024, VPL 0026 and VPL 0027 on May 21, 1970, but that the '026 and '027 were not actually shipped until May 25, 1970. Since the two disputed shipments were accepted on May 21, then by necessity they had to be manufactured and available for Government use on that date. Because there is direct evidence of manufacture pursuant to the contract, it is unnecessary to rely on the dates of delivery. *See Tektronix,* 216 Ct.Cl. at 151, 575 F.2d at 837. Motorola may not recover with respect to shipments VPL 0026 and VPL 0027.

### CONCLUSION

After fully examining the issues presented, the court concludes that Motorola's recovery is limited to the Government's procurement of the ten infringing devices manufactured or used on or after May 25, 1970. Recovery is denied with respect to all other transponders. Accordingly, defendant's motion for partial summary judgment is granted; plaintiff's motion for summary judgment is denied. The parties are directed to submit a joint status report by November 2, 1987, informing the court whether they are able to agree on the total

---

months does not aid Motorola since no methodology puts the critical date as far back as May 21, 1970, by which time all but ten uncontested transponders were manufactured and available for government use.

**5.** Defendant's amended answer to interrogatory No. 1 concerning the delivery schedule was as follows:

| Date | No. Transponders Delivered |
|---|---|
| 11 December 1969 | 10 |
| 12 January 1970 | 20 |
| 25 February 1970 | 20 |

amount due plaintiff, and whether any further issues must be resolved by the court before entry of judgment.

It is so ORDERED.

| Date | No. Transponders Delivered |
|---|---|
| 16 March 1970 | 20 |
| 20 April 1970 | 20 |
| 21 May 1970 | 4 |
| 25 May 1970 | 8 |
| 14 August 1970 | 2 |
| 2 September 1970 | 7 |
| 20 April 1971 | 1 |

Defendant subsequently submitted the affidavit of J.J. Skiffington (Vega's contract manager), dated January 25, 1982, which states that 12 transponders were delivered on May 21, and none were delivered on May 25, contrary to the

interrogatory answers. In view of the court's conclusion that evidence of acceptance is preferred over evidence of a delivery date as proof of manufacture, the difference is immaterial. Acceptance as to the transponders in question was outside the limitations period.